Ellis v. Batts.

MORGAN P. ELLIS v. JAMES H. BATTS AND OTHERS.

The holder of a survey and the surveyor thereof were both enjoined from sending up the field notes previous to the passage of the Act of February 10th, 1852, (General Laws, 1852, p. 58,) which provides "that the field notes of all surveys made previous to the passage of this Act shall be made out and returned in the manner now required by law to the General Land Office, on or before the 31st day of August, 1853, or they shall become null and void, and the said surveys shall become vacant, and be subject to be relocated and surveyed as in other cases, by any persons holding a genuine land certificate or other legal evidence of claim to land;" *held*, that the title of the holder to the land, by virtue of his location and survey was not forfeited by reason of his failure, on account of the injunction, to return the field notes within the time prescribed by said act to the General Land Office.

Subsequent to August 31st, 1853, but pending the injunction as above stated, the land was surveyed for and patent issued to a third party, having knowledge of the prior survey and of the pendency of the injunction. Such second survey and the patent issued thereon were held to be null and void.

A general law will not be held to repeal a particular and special law upon the same subject.

ERROR from Smith. Tried below before the Hon. R. A. Reeves.

The facts appear in the opinion of the court.

*Donley & Anderson*, for plaintiff in error.—There are, we submit, but two material points presented in the cause. The first is, did the injunction granted to Wells, the plaintiff, relieve the defendants from the necessity of complying with the requisitions of the act of 1852, requiring the return of the field notes of defendant's survey, prior to the 31st of August, 1853? The second is, did the statute of limitation commence running against the intervenor before his right to the land had accrued, as against the plaintiff, who shows no title. In presenting the first question, we would refer again to the manner in which this cause was conducted. The suit had been in existence for nearly ten years anterior to the time when the intervenor acquired his title and made

himself a party to the suit, and during that period conducted with a degree of negligence and carelessness that has, we hope, scarce a parallel in the State, and in which both plaintiff and defendant had displayed about an equal participation.

The ordinary diligence required of parties in preparation for trial, had it been pursued by the defendant, would surely have ended the litigation anterior to the time required by law to return his field notes; and even admitting that the injunction could relieve him, ordinarily, from the consequence of not having done so, yet, in this instance, the continuance of the injunction was caused by his own neglect in failing to make preparation and force his adversary to trial. In White v. Holliday, 20th Texas, 679, the excuse for not returning the field notes by the 31st of August, was that they were filed in a suit pending between the parties, and that the judge of the court, although applied to, in vacation, for that purpose, would not grant the order, and that the opposite party would not consent to it; and it did not appear that he sought to withdraw them during the several succeeding terms that expired afterwards, before the 31st of August, 1853. And the court decided that the excuse was not sufficient. (See White v. Holliday, 20 Tex., p. 681.)

We submit that this cause bears a strong and striking analogy to the cause above referred to, and in principle is not at all dissimilar.

The injunction never was of any advantage to the plaintiff, for even had defendant gone on to perfect his title and procured a patent, it would not have prejudiced the plaintiff's right, if he ever had any. And it would have taken but a slight showing, at a later period, when the proceedings in causes like this were better understood by the courts, to have dissolved the injunction. But although the defendant pleads that he made a motion to dissolve the injunction, in order to send up the field notes to the General Land Office, yet, in truth, no such motion ever was made, and no other effort to comply with the requisitions of the statute of 1852.

It would have been in the discretion of the court to dissolve the injunction at any time, by showing that irreparable mischief would result from its continuance. (Poor v. Carleton *et als.*, 3d Sum-

ner, 70, and authorities there cited.) And we would further submit—even if there were no authority or precedent precisely analogous to the question—that the expansive powers of equity are capable of reaching all new cases arising, and always adapt itself to them in such way as to prevent its powers from working hardships or wrong; and that, although under one state of circumstances an injunction would not and even should not be dissolved, under a different or altered state of things, where the dissolution would work an injury to the plaintiff, and would jeopardise and probably ruin the interest of the defendant, it should always be dissolved; and that injunctions and all other interlocutory orders are subject to the control of the court until a final judgment is rendered.

*Tignal W. Jones* and *P. Murrah*, for defendants in error. Cited Parish v. Weatherford, 19 Tex. R., 211; Commissioner General Land Office v. Smith, 5 Tex. R., 471; Daniel's Chancery Practice, vol. 3, page 1911; Kent's Commentaries, vol. 1, pages 494, 496. .

MOORE, J. This suit was commenced by Albert Wells in July, 1846, against Henry D. Bullard, as administrator of E. Batts, Hardy Strickland and Albert A. Nelson, the district surveyor of Nacogdoches land district, to enjoin said parties from returning to the General Land Office the field notes of a survey of six hundred and forty acres of land situated in the present county of Smith, made by virtue of the headright certificate of said Strickland for said Batts; and to establish plaintiff's superior right to the survey, upon which, it was alleged, he then resided. The injunction prayed for in the petition was granted, and has from that time to the present remained in force. In 1850, the defendants filed a motion asking the court to dissolve it, but this motion was overruled by the court, and during the subsequent progress of the case there has been no action with reference to it. On the 10th of November, 1854, the plaintiff in error obtained from the State a patent for the land, by virtue of a location and file made since the 31st of August, 1853; and afterwards, at the Spring Term,

45

1855, of the District Court, filed his petition, as intervenor, claiming the superior title to the land, against both the original plaintiff and defendants.

The field notes of the survey made for Batts had not been returned to the General Land Office previous to the issuing of the patent under which the plaintiff in error claims. He, however, was, at the time of his location and file, advised of all the facts with reference to this suit, and knew that the land had been previously surveyed for Batts, and that his administrator and the surveyor had been enjoined by the court from returning to the General Land Office the field notes of the survey. Upon the trial there was a verdict and judgment against the intervenor, for the reversal of which he prosecutes the present writ of error.

The only question that it will be necessary for us to determine, is whether Batts' title to the land, by virtue of his location and survey, were forfeited, owing to the failure to return the field notes of the survey to the General Land Office on or before the 31st of August, 1853, notwithstanding the injunction of the court forbidding it.

The 1st section of the Act of the 10th of February, 1852, requiring the return of field notes reads as follows: "The field notes of all surveys made previous to the passage of this act shall be made out and returned in the manner now required by law to the General Land Office, on or before the thirty-first day of August, 1853, or they shall become null and void, and the said surveys shall become vacant land, and be subject to relocation and survey, as in other cases, by any persons holding a genuine land certificate or other legal evidence of claim to land." The literal import of the statute is broad and unlimited, and if we can suppose that the legislature intended that it should be strictly and technically construed, it would annul all titles when there had been a failure to return the field notes within the time prescribed, no matter what were the circumstances which prevented it; and any one might locate a certificate upon it. We do not believe that such was the object and purpose of the legislature in enacting this statute. Surely they did not intend, when they say that the land shall be subject to re-location "by *any person* holding a

Ellis v. Batts.

genuine land certificate," to change the law which forbids the Commissioner of the General Land Office, surveyors, &c., from locating the public domain during their terms of office. Yet the literal meaning of the language used would lead to that conclusion; and it would be more reasonable to hold this than that it was the intention of the legislature to deprive a party of his land for his failure to do an act which he was forbidden by law from doing. The injunction by the court is the act of the State by its properly constituted tribunal; it is the duty of the citizen to obey its mandate; shall it be said that the State can or will enact a forfeiture from the failure of a party to do an act which it expressly forbids, and restrains him from performing? It is a well settled rule for the construction of statutes, that a general law will not be held to repeal a particular and special one, upon the same subject. This rule would appear to be applicable to the section of the statute in question. A party is individually and personally restrained by the mandate of the court, which by law he is bound to observe. Is the general language of a law subsequently passed, commanding all persons, when there is a large class upon whom it may operate, to do the act from which he is restrained, applicable to him? We think such a conclusion would not only work the grossest injustice in the present case, but would also violate the spirit and intention of the legislature in the passage of this law, as well as the established and settled rules for the construction of statutes. It is unnecessary, however, to discuss the question further; the construction placed upon the law by the District Court, is the same as that given by this court, to an analogous section of the same statute. (See Edwards v. James, 13 Tex., 52.)

There is no error in the judgment, and it is therefore affirmed.

Judgment affirmed.