### W. B. SHEPPARD ET AL. v. HENRY AVERY ET AL.

#### Decided March 5, 1902.

**1.—Limitation—Color of Title—Colony Grant—Validating Act.**

The Act of February 2, 1854, validating headright grants of lands in Austin's Little Colony which extended beyond its boundaries into Robertson's Colony, with a proviso that nothing therein should be construed to affect the rights of third parties, did not render such grant color of title, which would support limitation by possession for three years, as to a part of the grant lying in Robertson's Colony and located by a third party before the validating act was passed. (Judge Key dissenting. Affirmed on certificate of dissent by Supreme Court. Sheppart v. Avery, 95 Texas.)

**2.—Evidence Pedigree—Family History—Declarations.**

Declarations of members of a family are admissible on questions of pedigree and family history.

Error to Williamson County. Tried below before Hon. F. G. Morris.

*West & Cochran,* for plaintiffs in error.

*W. K. Makemson* and *N. A. Rector,* for defendants in error.

COLLARD, ASSOCIATE JUSTICE.—A statement of the nature and re-sult of this case is properly made in brief of plaintiffs in error, as follows:

"The suit was originally brought, in form of trespass to try title, by W. B. Sheppard and West and McGown, against Henry Avery, John Avery, Martin Avery, Hugh Avery, Nancy Avery, Albert Avery, Mary E. Avery, and V. R. C. Avery to recover the east half of the William C. Hays 1280-acre survey in Williamson County, described in a petition filed August 26, 1891. Another suit was filed September 8, 1891, by Charles Tinsley against Henry Avery, Mrs. Sarah Ann Avery, Mrs. Nora Mayhall and her husband Albert Mayhall, Thomas Avery, Melinda Avery, James Avery, John Avery, Martin Avery, Hugh Avery, Nancy Avery, Albert Avery, and Mary E. Avery, and against V. R. C. Avery as guardian of the estate of the said John, James, Martin, Hugh, Nancy, Albert, and Mary E. Avery.

"This suit was also in form of trespass to try title for a specific 195 acres of the east half of the said Hays survey. The suits were consoli-dated. Defendants answered by pleas of not guilty, three, five, and ten years limitation, and claim for valuable improvements. The court per-emptorily charged the jury to find for the defendants on the ground that under the evidence and admission of counsel for plaintiffs, de-fendants' plea of the statutes of limitation of three years should pre-vail. Judgment was rendered on July 16, 1901, accordingly, for the defendants, from which plaintiffs have sued out this writ of error. This case has been before this court heretofore (32 Southwestern Re-porter, 791) and also before the Supreme Court (89 Texas, 301) but upon different questions."

Error is assigned to the trial court's charge peremptorily directing a verdict for defendants.

Plaintiffs claimed the land in suit by virtue of location and survey of a valid bounty land warrant for 1280 acres of land, dated December 11, 1846, issued to the heirs of W. C. Hays, the field notes of the loca-tion duly filed in the State Land Office the 16th day of February, 1849. The land claimed by defendants is a portion of the Willis Avery grant which lays outside of Austin's Little Colony, in Robertson's Colony. Defendants are the heirs of Willis Avery, and claim under grant to him as a colonist in Austin's Little Colony dated November, 1832, a trans-lated copy of which was filed for record in Williamson County May 19, 1852, and duly recorded, and also duly recorded in deed records of Travis County, August 24, 1840. The grant to Avery covered land in and outside of Austin's Little Colony, that outside being the land in controversy. A patent was issued to the heirs of Hays, October 14, 1865, by virtue of the location and survey of his bounty warrant. Plaintiffs admitted possession of defendants was sufficient under the three years statute of limitations which had been set up as a bar to plaintiffs' suit, and the court, holding that the Avery grant of the land in controversy outside of Austin's Little Colony, having been validated

by act of the Legislature in 1854, was sufficient title under the statute of three years' limitation, directed a verdict for defendants. Plaintiffs denied that the Avery grant of the land outside of the Little Colony covered by their location and survey could support limitation of three years.

*Opinion.*—The court's charge directing a verdict for defendant under the admission of three years possession is the question involved in this appeal, plaintiffs claiming that the Act of 1854 confirming the grant to Avery did not have the effect of confirming that grant as to the land then located by virtue of the Hays certificate, that the grant to Avery of land outside of Austin's Little Colony was void and is still void as to plaintiffs location, and therefore can not support the statute of limitations of three years.

The act of the Legislature in question was passed February 2, 1854. It is an act confirming certain headrights of land lying on the boundary line of Robertson's Colony and Austin's Little Colony, and reads as follows:

"Sec. 1.   Be it enacted by the Legislature of the State of Texas, that the headrights of land granted to colonists before the 13th day of November, 1835, and lying and being intersected or crossed by the boundary line of Robertson's Colony and Austin's Little Colony, and being part in one of said colonies and part in the other, are hereby declared to be as valid as if such headrights were lying and being wholly within the colony where such headright grants were issued; provided that nothing herein shall be so construed as to affect the rights of third parties." The Avery grant was a grant to him as a colonist in Austin's Little Colony.   At the time the act was passed the Hays bounty warrant was located and the survey duly returned to the General Land Office, thus appropriating the land in dispute.

The land covered by the Hays location comes clearly within the proviso of the act of validation and was not affected by the act.   It is distinctly excepted from the operation of the act by the proviso.   The grant to Avery outside the limits of Austin's Little Colony was void in the beginning and is still void as to the Hays title, and not such title or color of title as will support the statute of limitations of three years. Land and Mortgage Co. v. State, 1 Texas Civ. App., 620; Smith v. Power, 23 Texas, 33; Hamilton v. Avery, 20 Texas, 630, et seq.; Howard v. Perry, 8 Texas, 262; Griffith v. Sauls, 77 Texas, 635; Suth. on Stat. Con., sec. 222.

As to location of a certificate on land and what severs the land from the public domain, see 49 Texas, 488; 26 Texas, 706; 51 Texas, 381-383; 82 Texas, 416.

We do not understand that the five years statute of limitation can apply, as defendants were not claiming under a deed, but a grant from the government.   The three years statute does not apply as has been

shown, nor does the five years statute. There was error in the court's peremptory charge on limitation of three years, for which the judgment of the lower court is reversed and the cause remanded as prayed for by appellants.

Defendants in error insist, by cross-assignment of error which the parties have agreed may be filed in this court, that the court erred in permitting to be read in evidence the depositions of W. B. Sheppard, one of the plaintiffs, wherein he stated that he bought the land in controversy from the heirs of William C. Hays, and that said Hays was a soldier in the war of the Texas revolution, and that he died in Texas, and that his widow was named Elizabeth, and afterward married one Davis, and that Mary E. Smith and Hester A. Hays were his only children and heirs, and that he learned these facts from the Hays family at the time he bought the land in controversy; to all which defendant objected, because (1) the same was hearsay; (2) the same could not be given as family history, the witness not being a member of the family and not qualifying himself to detail family history; (3) if said answers showed that said Elizabeth Davis and Mary E. Smith and Hester A. Hays, were the surviving wife and children of W. C. Hays, their declarations to that effect were self-serving, and therefore inadmissible; (4) no letters having been introduced nor their absence accounted for, their contents could not be shown; but the objections were overruled, and the court permitted the depositions to be read, as shown by bill of exception number 2. The bill of exception shows that plaintiff offered to read depositions of W. B. Sheppard, and defendant objected to that portion set out, because the witness had already testified that he never knew William C. Hays, and the depositions objected to showed that he acquired his knowledge of the fact of heirship of the parties who conveyed to him as the heirs of William C. Hays, from the parties who executed said conveyance; that their declarations of heirship were self-serving and hearsay; but objections were overruled, and the depositions were read as follows:

"We (Castaine and witness) bought of William C. Hays heirs; I bought and acquired all the land I owned in Williamson County, Texas, from the heirs of William C. Hays, deceased: I negotiated the purchase of the land, and all the rights of the heirs of William C. Hays, deceased, and I was present at the execution of said deed, and accompanied the grantors therein, together with several other neighbors, to the Commissioner's office, where said grantors signed and acknowledged the same before the Commissioner, N. H. McGuffy, who questioned them severally and closely as to the heirship and their identity as such heirs." To the court's action in allowing said answers to be read in evidence, the defendants then and there excepted.

"And thereafter on said trial the plaintiffs further offered the following question and answer propounded to said witness W. B. Sheppard and answered by him. Question: Did you know the said William C. Hays? If yes, state if you knew his coming to Texas, and when he

came and whether he is dead or alive, and if dead, when and where he died, and your means of knowing. Answer: I did not know said William C. Hays personally, or of my own personal knowledge, but knew of his being in Texas as a soldier before he died, by and through communications, letters, and messages to his family and friends, who were expecting him to speedily return from Texas. Instead of returning from Texas as expected, they received communication of his death, which fact they specially made known to me. Then· his heirs, after learning something of his rights, made application for whatever was coming to said William C. Hays, deceased, under his rights as a soldier who did military service in the army of Texas.

"Question 5. What connection did the said Elizabeth Davis, Mary E. Smith, and Hester A. Hays bear to the said William C. Hays? Did the said Hays leave any but the two children?

"Answer 5. The said Elizabeth Davis, who sometimes signed her name Mary Elizabeth Davis, was well known, beyond a doubt, to have been the widow of the late William C. Hays, deceased, and that the said Mary E. Smith and Hester A. Hays, the latter a minor then, were the only children and heirs of said William C. Hays, deceased, and were the only children left by him.

"Defendant read from the answer of said witness to cross interrogatory number 2, 'I did not know any of the Hays people personally, until I· met them seeking information about the Texas law in favor of soldiers who were in the army of Texas;' and then objected to the reading in evidence of the foregoing answers, (1) because the same were hearsay; (2) because the same could not be given as family history, the witness not being a member of the family and not qualifying himself to detail family history; (3) because if said answers showed that said Elizabeth Davis and Mary E. Smith and· Hester A. Hays were the surviving wife and children respectively of said Hays, their declarations to that effect were self-serving, and therefore inadmissible; (4) because, no letters having been introduced nor their absence accounted for, their contents could not thus be shown. All the objections were overruled, and defendants excepted and reserved bill, which was allowed and the testimony admitted."

It was shown that Hays, his surviving wife and two children were dead. The certificate for the 1280 acres of land was issued to his heirs and so was the patent. The testimony of William Sheppard, which it is insisted was improperly admitted in evidence, is substantially as follows: He was 82 years old and resided in Hamilton County, Ohio, where he had resided since 1841. He says: "I bought all the land I ever owned in Williamson County, Texas, from the heirs of William C. Hays, deceased. In reference to the deed on record in Williamson County, dated September 29, 1854, and signed by Elizabeth and Thomas Davis and others claiming to be the widow and children of William C. Hays, deceased, to W. B. Sheppard and J. Castaine, I negotiated the purchase of the land and all the rights of the heirs of Wil-

liam C. Hays, deceased, and was present at the execution of the deed, and accompanied the grantors therein, together with several of their neighbors, to the Commissioners Office, signed and acknowledged the same before the Commissioner, A. H. McGuffey, who questioned them severally closely as to their heirship and their identity as such heirs."

The following questions and answers were admitted over objections of defendant: "4. Did you know the said William C. Hays? If yes, state of (if) you know of his going to Texas, and when he came, and whether he is dead or alive, and if dead, when and where he died, and your means of knowing?

"To which question said witness answered as follows: I did not know said William C. Hays personally or of my own personal knowledge, but knew of his being in Texas as a soldier before he died and by and through communications and letters and messages to his family and friends who were expecting him to speedily return from Texas, and who expected also to be removed by him to Texas."

To which question and answer the defendants by counsel in open court objected, because the same was hearsay, the witness stating that he never knew said William C. Hays, and was not qualified so as to detail family history, which objection was overruled, to which action of the court defendants objected in open court at the time, and now here save their bill of exception.

"Plaintiffs also propounded to the witness the following question: 5. What connection did the said Elizabeth Davis, Mary E. Smith, and Hester A. Hays bear to the said William C. Hays? Did the said Hays leave any but two children? To which question, the witness responded as follows: The said Elizabeth Davis, who sometimes signed her name as Mary Elizabeth Davis, was well known beyond a doubt to have been the widow of the late William C. Hays, deceased, and the said Mary E. Smith and Hester A. Hays, the latter then a minor, were the only children and heirs of said William C. Hays, deceased, and were the only children left by him.

"To which question and answer defendants on the trial objected because the same was hearsay, which objection was by the court overruled, and the answer permitted to go to the jury, to which action of the court the defendants duly excepted, and now save their bill of exception.

"Plaintiffs also propounded to said witness the following question: 6. From the deed above referred to, it seems that the witness White knew these parties. Do you know where he is now or where any of the Hays people are. Where and when did you last hear of him and them?

"To which question, the said witness made answer as follows: I have not heard anything of the Hays people for a long while, and when I did start out to find some of them to take their depositions, late in the winter or early spring of this year, I learned that they were dead. I made inquiry among old neighbors and church members and learned that the whole family were dead and had been for quite a long while. Then I found one James J. Davis and his wife, who had not removed

entirely out of reach of the neighborhood, and who knew these parties as church members. Said Davis' deposition has already been taken. I don't know where said White is. I called on Mr. McGuffey and he does not remember anything about him. I had no acquaintance with him.

"To which question and answer, the defendants objected because the same is hearsay, but which objection was overruled by the court and said answer permitted to be read to the jury, to which action of the court the defendants by their counsel in open court objected and now here tender their bill of exception.

"Plaintiffs read the defendant's second cross-interrogatory to said witness: Did you not testify in your former depositions that you never knew William C. Hays, and that you did not know whether or not he was dead or alive, or if dead whether he left a wife or children? To which said witness made answer: I think I answered then as I answer now as to my knowledge of all the parties except Thomas Davis. I knew him some time before I knew any of them and before he married William C. Hay's widow. I did not know any of the Hays people personally before I met them seeking information about the Texas law in favor of volunteers who were in the army of Texas. After the death of said William C. Hays, the heirs made application for his rights under the Texas law. Some time thereafter, said Thomas Davis became the husband of the widow of said William C. Hays, and I concluded to deal with them for all of their claims under said right, and had transferred to me their rights. The said William C. Hays left a wife and two female children.

"To said question and its answer the defendants in open court objected on the trial, because said answer was hearsay, which objection was by the court overruled and the answer permitted to go to the jury, to which action of the court defendants by their counsel in open court excepted, and now here save their bill of exception.

"Plaintiffs also read defendant's third cross-interrogatory to said witness as follows: Is it not a fact that you did not know said William C. Hays and that you do not know whether he is living or dead and whether he had wife or children. You could not know such facts and not know the man, could you?

"The following portion of said witness' answer to said question was by the court permitted to be read in evidence: I am sure said William C. Hays is dead and was at the time the heirs made application for land under his rights. That I am ready to affirm as that General Sam Houston and General Washington are dead.

"To said question, and so much of the answer as above stated which was permitted to go to the jury the defendant objected because the same was hearsay and argumentative, which objection was by the court overruled, to which action of the court the defendants in open court excepted."

We believe the declarations of the parties, members of the family now deceased, were admissible in evidence as to pedigree in the inquiry as to pedigree then being made. The testimony was not objectionable hearsay. To prove heirship, the testimony objected to was admissible. See Nehring v. McMurrain, 57 S. W. Rep., 945, division 2 of the opinion, and authorities cited. See also 1 Greenl. on Ev., secs. 103, 104.

We find no error in the ruling admitting the testimony; but because of the error pointed out in the first part of this opinion, as requested by appellant, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

I do not concur in the disposition made of this case and will file an opinion assigning the reasons for my dissent.

KEY, Associate Justice.

On certificate of dissent this case was carried before the Supreme Court, where, on May 26, 1902, the ruling of the majority on the question of limitation was affirmed. Sheppard v. Avery, 95 Texas, 501. The dissenting opinion of Justice Key, in the Court of Civil Appeals, embodied in the certificate, is there published.