

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN      AUSTIN 11, TEXAS

JO▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

ATTORNEY GENERAL

Honorable Claude A. Williams
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:                          Opinion No. 0-5524
                                    Re: Whether Senate Bill No. 266
                                        applies to rental space leased
                                        by the Texas Unemployment Com-
                                        pensation Commission.

        This will acknowledge receipt of your letter of August 13, 1943,
wherein you have requested the opinion of this department upon the above
stated matter. So that this opinion will reflect all of the facts you
have submitted to us, we quote the body of your letter in full as follows:

        "Your Department recently issued Opinion No. 0-5427
relative to the effect of Senate Bill No. 266, Regular
Session of the 48th Legislature, upon the payment of cur-
rent rentals under existing leases. We presume, in view
of the legislative policy as expressed in several recent
appropriation bills, that Senate Bill No. 266 (to appear
as Article 666b in Vernon's Annotated Civil Statutes)
does not apply to the funds used by this Commission for
the payment of rentals, but in order to clarify the mat-
ter, we are requesting your opinion.

        "Under the administrative authority vested in this
Commission by Article 5221b-9 (V.A.C.S.) the Commission
has taken leases on a number of offices located at various
points in the State. Payment for these leases is made out
of the Unemployment Compensation Administration Fund
created in the State Treasury by Article 5221b-11 (V.A.C.S.).
We direct your attention to the fact that the Texas Unem-
ployment Compensation Commission is not operated on funds
derived from State taxation, but is operated on a grant
from the Social Security Board under Title III of the Social
Security Act, as amended, and the Unemployment Compensation
Administration Fund consists wholly of funds received from
the Federal Government. These funds are not granted to the

State as such, but rather are granted to this Commission as a Commission for administrative use by that body in keeping with such rules and regulations as may be prescribed by the Social Security Board.

"Article 5221b-11 (V.A.C.S.) provides, among other things, 'all moneys in this fund which are received from the Federal Government or any Agency thereof shall be expended solely for the purposes and in the amounts found necessary by the Social Security Board for the proper and efficient administration of this Act.' The terms of Title III under which this money is granted provide that the administrative fund shall not be granted by the Social Security Board unless it is found that all moneys received from the Board are expended solely for the purposes and in the amounts found necessary by the Board for the proper and efficient administration of such State law. In this connection it is pointed out that all of these contracts must be made in accordance with standards promulgated by the Board and are also examined and approved by an auditor of the Board.

"We therefore request your opinion as to whether or not Senate Bill No. 266, Regular Session of the 48th Legislature, is applicable to payment of rental by this Commission out of funds received from the Federal Government."

In our opinion No. 0-5427, we advised the State Comptroller of Public Accounts that:

"Any new lease or rental contract entered into after the passage of Senate Bill 266 (Acts 1943, 48th Leg., effective May 7, 1943) must be executed in the manner prescribed by Sections 1 and 2 of the Act. The Legislature having provided a mode for the securing of rental space, the agencies and departments affected are restricted to that mode and must conform to these requirements." (Emphasis added)

If the Texas Unemployment Compensation Commission is one of the affected agencies or departments therein referred to, it would follow that the provisions of Senate Bill No. 266 apply to rental space needed by it. If not, the Commission may continue to follow the procedure it has followed in the past in securing rental space.

Any intelligent investigation of the powers and authority of the Texas Unemployment Compensation Commission must include an examination of certain federal statutes as well as state statutes. In this particular phase of state activity--unemployment insurance--federal and state legislation are so interwoven as to constitute a joint legislative undertaking by the Federal Congress and the Texas Legislature.

Your inquiry involves administrative details, a matter in the joint legislative endeavor in which State and Federal legislation is most particularly intermingled and in which the cooperation between the two governments is most pronounced. The extent of this cooperation will become apparent from the statutes and acts which will be hereinafter quoted and referred to.

The federal legislation on the subject will be found under Title 42, Subchapter III, United States Code, under the title "Grants to States for Unemployment Compensation Administration."

Section 501, under this title and subchapter, provides for a continuing appropriation of certain funds for the purpose of assisting the states in the administration of their unemployment compensation laws.

Section 502 contains the following provisions:

"(a) The (Federal Social Security) Board shall from time to time certify to the Secretary of the Treasury for payment to each State which has an unemployment compensation law approved by the Board under sections 1610-1611 of Title 26, such amounts as the Board determines to be necessary for the proper and efficient administration of such law during the fiscal year for which such payment is to be made. (Emphasis added).

Section 503 of this title contains the following provisions:

"(a) The Board shall make no certification for payment to any State unless it finds that the law of such State, approved by the Board under sections 1610-1611 of Title 26, includes provision for --

" . . . .

"(8) Effective July 1, 1941, the expenditure of all moneys received pursuant to section 502 of this title solely for the purposes and in the amounts found necessary by the Board for the proper and efficient administration of such State law." (Emphasis added)

The remaining provisions in this section provide that in the event the State agency charged with the administration of the State Unemployment Compensation Law fails to carry out the requirements of the Social Security Board, the Board shall make no certification for payment to the recalcitrant State.

The applicable provisions of our State law are found in the Unemployment Compensation Act, Article 5221b, Vernon's Annotated Civil Statutes.

Section 9 of Article 5221b contains the following provisions:

"(a) Duties and Powers of Commission: It shall be the duty of the Commission to administer this Act; and it shall have power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations, and take such other action as it deems necessary or suitable to that end. . . .

" . . . .

"(i) State-Federal Cooperation: In the administration of this Act, the Commission shall cooperate to the fullest extent consistent with the provisions of this Act, with the Social Security Board, created by the Social Security Act, approved August 14, 1935, as amended; shall make such reports, in such form and containing such information as the Social Security Board may from time to time find necessary to assure the correctness and verification of such reports; and shall comply with the regulations prescribed by the Social Security Board governing the expenditure of such sums as may be allotted and paid to this State under Title III of the Social Security Act, (Title 42, Subchapter III, U.S.C.) for the purpose of assisting in the administration of this Act." (Emphasis added)

Section 11, Article 5221b (Section 13 in original Act) provides the following:

"(a) Special Fund: There is hereby created in the State Treasury a special fund to be known as the Unemployment Compensation Administration Fund. All moneys which are deposited or paid into this fund are hereby appropriated and made available to the Commission and shall be continuously available to the Commission for expenditure in

accordance with the provisions of this Act, and shall
not lapse at any time or be transferred to any other
fund. <u>All moneys in this fund which are received from
the Federal Government or any agency thereof shall be
expended solely for the purposes and in the amounts
found necessary by the Social Security Board for the
proper and efficient administration of this Act.</u> This
fund shall consist of all moneys appropriated by this
State; all moneys received from the United States of
America, or any agency thereof, including the Social
Security Board; . . . .", etc. (Emphasis added)

The State legislation, above quoted and referred to, reveals an
unmistakable intent on the part of the Legislature to require the Texas
Unemployment Compensation Commission to cooperate to the fullest possible
extent with the Federal Social Security Board in matters concerned with
the administration of the Texas Unemployment Compensation Act.

The reason why the Texas Legislature has required such extensive
cooperation with the Federal Social Security Board becomes apparent when
we realize that practically all funds used in the administration of the Un-
employment Compensation Act are furnished by the Federal Government and
that none are furnished by the State. Under the Federal enactments, which
are quoted and referred to above, the Federal Government will continue to
furnish these funds only so long as the Texas Commission complies with the
rules and regulations of the Federal Social Security Board with regard to
the expenditure of the moneys so furnished.

Under Section 503, subsection (a), Title 42, U.S.C.A., the Social
Security Board is prohibited from making certification for payment to any
State unless such State has enacted legislation which provides for the ex-
penditure of funds furnished under Section 502 of that title <u>"solely for the
purposes and in the amounts found necessary by the Board for the proper and
efficient administration of such State law."</u> (Emphasis added)

In compliance with this requirement, the Texas Legislature has
provided in subsection (a) of Section 11, Article 5221b, Vernon's Annotated
Civil Statutes, that: <u>"All moneys in this (Administration) fund which are
received from the Federal Government or any agency thereof shall be expended
solely for the purposes and in the amounts found necessary by the Social
Security Board for the proper and efficient administration of this Act."</u>
(Emphasis added)

That these provisions of the Federal and State laws result in
placing in the Federal Social Security Board in Washington, absolute control
over the securing of rental space by the Texas Unemployment Compensation

Commission, was illustrated in the recent case of Starling Realty Corporation v. State, 20 N.Y.S. (2d) 278, 174 App. Div. 375, affirmed 1941, 36 N.E. (2d) 201, 286 N.Y. 272, re-argument and motion denied, 1942, 37 N.E. (2d) 138, 286 N.Y. 696, 26 N.Y.S. (2d) 47, 261 App.Div. 363, which was affirmed, 1941.

In the Starling case, the Division of Placement and Unemployment Insurance of New York, which corresponds to our Unemployment Compensation Commission, had rented certain premises from the Starling Realty Corporation, and, thereafter, the Division of Placement and Unemployment Insurance, upon a determination of the Federal Social Security Board that the space was no longer needed and that therefore no further funds would be provided for rental on those premises, cancelled its rental agreement or lease. This action by the Division was made pursuant to a clause in the leasing contract that the liability of the State was contingent upon the availability of moneys to pay such rental.

The New York Court of Claims in denying the landlord's claim for rental, points out that:

"The power of the (Federal Social Security) Board to provide necessary moneys for increasing the number of necessary offices or enlarging already existing offices would seem to be clear and it would seem equally clear that it could refuse to provide moneys for such offices as it might decide unnecessary in the administration of the law."

The only logical conclusion to be deduced from this holding and the quoted provisions of the Federal and State laws is that absolute discretion over the amount of rental space needed by the Texas Unemployment Compensation Commission and the amount of money to be spent for rental has been placed under our Unemployment Compensation Act in the Federal Social Security Board in Washington.

Senate Bill No. 266 (Chap. 258, Acts 1943, 48th Leg.) on the other hand places almost an equal amount of discretion over the procurement of rental space by all State agencies and departments in the Texas Board of Control. We quote the first two sections of Senate Bill No. 266, as follows:

"Section 1. Hereafter all departments and agencies of the State Government, when rental space is needed for carrying on the essential functions of such agencies or departments of the State Government, shall submit to the State Board of Control a request therefor, giving the type, kind, and size of building needed, together with any other necessary description, and stating the purpose for which it will be used and the need therefor.

> "Section 2.  The State Board of Control, upon
> receipt of such request, and if the money has been
> made available to pay the rental thereon, and if in
> the discretion of the Board such space is needed,
> shall forthwith advertise in a newspaper, which has
> been regularly published and circulated in the city,
> or town, where such rental space is sought, for bids
> on such rental space, for the uses indicated and for
> a period of not to exceed two years.  After such bids
> have been received by the State Board of Control at
> its principal office in Austin, Texas, and publicly
> opened, the award for such rental contract will be
> made to the lowest and best bidder, and upon such
> other terms as may be agreed upon.  The terms of the
> contract, together with the notice of the award of
> the State Board of Control will be submitted to the
> Attorney General of Texas, who will cause to be pre-
> pared and executed in accordance with the terms of
> the agreement, such contract in quadruplicate; one
> of which will be kept by each party thereto, one by
> the State Board of Control, and one by the Attorney
> General of Texas.  The parties to such contract will
> be the department or agency of the government using
> the space as lessee and the party renting the space
> as lessor."

Insofar as the Texas Unemployment Compensation Commission is concerned, the discretion which Senate Bill No. 266 places in the Board of Control would be in direct conflict with the discretion, which we have already seen, has been placed in the Federal Social Security Board.  Since practically all funds used in the administration of the Unemployment Compensation Act are furnished by the Federal Government and its agencies, and none is furnished by the State, the provisions of Senate Bill No. 266, if held applicable to the Texas Unemployment Compensation Commission, would create an unbridgeable conflict.  Quite obviously, the discretion over the amount of space and the price to be paid for it cannot rest both in the Board of Control and in the Social Security Board.  One or the other must have the final word.

A simple answer to this stalemate, may be found in the second clause of Section 2 of Senate Bill No. 266, which provides that the Board of Control's action is contingent upon the availability of moneys to pay rental upon the required space.  As we have seen, the only moneys available to the Texas Unemployment Compensation Commission for rental space are those furnished for the payment of rental upon space approved by the Social Security Board.  And it might be held that since no moneys are available, the Board of Control has no jurisdiction.

However, we prefer not to rest our opinion solely upon this tenuous technicality, but rather upon accepted legal principles which we believe point to a proper solution of the apparent conflict.

Senate Bill No. 266 contains no repeal of any of the provisions of the Texas Unemployment Compensation Act, nor for that matter of any other previous legislative enactments. It contains neither a specific nor a general repeal of prior legislation. In order to reach the conclusion that this Bill, in fact, repeals any portion of the Unemployment Compensation Act, we would be required to rely upon a repeal by implication. As pointed out in Texas Jurisprudence, repeals by implication are not favored.

> "According to numerous pronouncements of the Texas courts, the repeal of statutes by implication is never favored or presumed. The two acts will persist unless the conflicting provisions are so antagonistic and repugnant that both cannot stand. Where there is no express repeal, the presumption is that in enacting a new law the Legislature intended the old statute to remain in operation." 39 Tex. Jur. 140, and cases cited in the footnotes.

Under the rules above stated, we must presume that in enacting Senate Bill No. 266 and in making no express repeal of existing legislation, the Legislature intended that the conflicting provisions of the Unemployment Compensation Act remain in effect. Texas Jurisprudence further points out that:

> "If by any reasonable construction two acts or statutory provisions can be reconciled and so construed that both may stand, one will not be held to repeal the other. Especially where the older law is particular and is expressed in negative terms, and the later statute is general, a construction will be sought which harmonizes them and leaves both in concurrent operation." 39 Tex. Jur. 141-2, and cases cited in the footnotes.

We direct your attention also to the rule that a general act does not repeal a special or particular law. The enactment of a general law does not ordinarily operate as a repeal of a particular or special law, by implication, although both relate to the same subject matter. On the contrary, both statutes are permitted to stand, and the general law is applicable to all cases not embraced by the specific act. In other words, the particular act is construed as constituting an exception to the general law. This is said to be a settled rule of construction based upon the presumption that a specific statute evidences the intention of the Legislature more clearly than a general one, and therefore should control. 39 Tex. Jur. 149-150; Townsend v. Terrell, 118 Tex. 463, 16 S.W. (2d) 1063; Ellis v. Batts, 26 Tex. 703; Cole v. State, 106 Tex. 472, 170 S.W. 1036, dismissing error 163 S.W. 353.

v. Batts, 26 Tex. 703; Cole v. State, 106 Tex. 472, 170 S.W. 1036, dismissing error 163 S.W. 353.

Under these rules of statutory construction, the Texas Unemployment Compensation Act will be held controlling in matters relating to the securing of rental space by the Unemployment Compensation Commission, while Senate Bill No. 266 is controlling in matters regarding rental space needed by other departments or agencies, which are not controlled by special or particular statutes.

You are therefore advised, and it is the opinion of this department, that the provisions of Senate Bill No. 266 do not apply to the Texas Unemployment Compensation Commission.

Trusting that we have fully answered your inquiry and that you will call upon us if we can be of further service, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Peter Maniscalco
Peter Maniscalco
Assistant

PM:ff

APPROVED AUG 30, 1943

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
By /s/BWB
Chairman