

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

October 10, 1962

Honorable M. T. Harrington      Opinion No. WW-1447
Chancellor ·
Texas Agricultural and Mechanical   Re:   Whether the Board of
   College System                Directors of the Agricul-
College Station, Texas                tural and Mechanical
                                                  College of Texas has
                                                  the authority tó execute
                                                  an oil and gas lease
                                                  on mineral classified
                                                  land under the stated
Dear Dr. Harringtón:                  facts.

        In a recent opinion request of this office you
state in effect that by the will of Mrs. Vena Wallace von
Roeder, deceased, the Agricultural and Mechanical College
of Texas has acquired a 1/24th interest in the surface
estate of Sections 1 and 2, Block 93, Public School Land
in Culberson County, Texas and an undivided 3/80ths interest
in the surface estate of Sections 3, 4, 5, 6 and 7, Block
93 and Sections 4 and 5 of the South 1/2 of Section 6, and
the Northwest 1/4 of Section 6, Block 91, Public School
Lands, Culberson County, Texas.  You state that the surface
estate of these lands had been sold originally to private
parties by the State and that the minerals had been retained
by the State of Texas, such lands having been mineral class-
ified by the Land Commissioner.

        You then ask, in effect, the following two questions:

        1.  Under the provisions of the "Relinquishment
Act" (Article 5367 et seq. V.C.S.) can the Board of Directors
of the Agricultural and Mechanical College of Texas execute
a valid oil and gas lease on the above described lands?

        2.  Under the authority of Article 2613(a)-3
Vernon's Civil Statutes can the Board of Directors of the
Agricultural and Mechanical College of Texas execute a valid
oil and gas lease on the above mentioned lands?

The disposition of State land is exclusively in the control of the Legislature of the State of Texas. Stiles v. Hawkins, 207 S.W. 89 (Comm.App. adopted Sup. Ct. 1918); 34 Tex. Jur. 46, Public Lands, Sec. 25. In the year 1919, the Legislature of the State of Texas provided for the disposition of oil and gas leases on State owned land classified as mineral by passing Article 5367 et seq. By the provisions of the Relinquishment Act as interpreted in the case of Greene v. Robison, 117 Tex. 516, 8 S.W. 2d 655 (1928), the surface owner of lands classified as mineral is authorized to act as agent for the State of Texas for the execution of oil and gas leases thereon. This act was passed for, among other purposes, to more closely align the owner of the surface estate in such lands to the interests of the State of Texas in the minerals therein. Norman v. Giles, 148 Tex. 21, 219 S.W.2d 678 (1949). Article 5367 V.C.S., in this regard reads in part as follows:

> "The State hereby constitutes the owner of the soil its agent for the purpose herein named . . ."

Clearly the Legislature was speaking of private persons who might own the surface estate of lands classified as mineral when it used the word "owner" in the Relinquishment Act and did not intend that the word be interpreted as including some State Agency in such meaning, since State Agencies and State Boards are the State, and property which they might possess is already owned by the State. It would be absurd under such circumstances to attempt to construe Article 5367 so as to have "The State hereby constitutes /ing7 the . . . /State7 its agent for the purpose herein named".

It might be further noted that public officers and governmental and administrative boards possess only such powers as are expressly conferred upon them by law or are necessarily implied from the powers so conferred, State v. Cage, 176 S.W. 928, (Civ.App. 1915, error ref.); Callaghan v. McGown, 90 S.W. 319, (Civ.App. 1905, error ref.); Eastin v. Ferguson, 23 S.W. 918 (Civ.App. 1893); Harlingen Ind. School Dist. v. C. H. Page & Bros., 48 S.W.2d 983 (Comm.App. 1932); State Line Consol. School Dist. v. Farwell Ind. School Dist., 48 S W.2d 616 (Comm.App. 1932); Miller v. Brown, 216 S.W. 452 (Civ.App. 1919, error ref.); Von Rosenberg v. Lovett, 173 S.W. 508 (Civ.App. 1915, error ref.); Royse Ind. School Dist. v. Reinhardt, 159 S.W. 1010 (Civ.App. 1913, error ref.);

Childress County v. State, 127 Tex. 343, 92 S.W.2d 1011 (1936); Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451 (1948); Hill v. Sterrett, 252 S.W.2d 766 (Civ.App. 1952, error ref., n.r.e.).

The "Relinquishment Act" (Article 5367 et seq.) does not expressly authorize or confer the power upon the Board of Directors of the Agricultural and Mechanical College to lease State owned Permanent Free School Land for oil and gas. In fact the act does not even make such authorization by implication. Thus, "The Relinquishment Act." (Article 5367 et seq.) is not authority for the Board of Directors of A & M College to execute an oil and gas lease on the mineral classified land in question.

In 1931 the Legislature passed Article 2613(a)-3 Vernon's Civil Statutes which Article authorizes the Board of Directors of A & M College to lease for oil and gas State owned lands which fall within the following definition or classification:

"The Board of Directors of the Agricultural and Mechanical College of Texas is hereby authorized and empowered to lease for oil, gas, sulphur, mineral ore and other mineral defelopments to the highest bidder at public auction all lands used for experimental stations and all other lands under its exclusive control or any part thereof now owned by the State of Texas and acquired for the use of the Agricultural and Mechanical College of Texas and its divisions or that may be acquired hereafter for the use of the Texas Agricultural and Mechanical College System."

Clearly the Legislature did not intend that mineral classified land be considered as included in the lands described above which can be leased by the Board of Directors of A & M College. Such lands as described in the quote above are not mineral classified lands. Should the Legislature have intended that the above description include mineral classified lands, insofar as mineral classified lands would be read into the above quoted verbiage of the act, the act would be unconstitutional.

This would most certainly be so because of the following reasons. By Article 7, Section 2 of the Constitution of Texas adopted in 1876 the Permanent Free School Fund was created. By Article 5416, Vernon's Civil Statutes, mineral classified lands along with other lands were dedicated to the Permanent Free School Fund. Article 7, Section 6 of the Constitution of Texas provides that no law shall ever be enacted appropriating any part of the Permanent Free School Fund to any other purpose than is set out in said Article. However, Article 2613(a)-3 places all of the proceeds from the sale of lands included within its classification, as quoted above, under the control of the Board of Directors of the Agricultural and Mechanical College for the College's own use. Since such a use is not authorized by Article 7, Section 6 of the Constitution for Permanent Free School Fund Land or funds, should the Legislature have intended such mineral classified lands be leased for oil and gas by the Agricultural and Mechanical College Board of Directors, and funds obtained therefrom, used by the College, Article 2613(a)-3 would to that extent be unconstitutional. Article 2613(a)-3 would also be unconstitutional under the provisions of Article 7, Section 4 of the Constitution of Texas, since mineral classified lands are a part of the Permanent Free School Fund which fund is placed by Article 7, Section 4 under the control of the Board of Education. Article 2613(a)-3 attempts to place all of the proceeds from the sale of lands included within its definition under the control of the Board of Directors of the Agricultural and Mechanical College of Texas. Thus, such an interpretation of Article 2613(a)-3 would violate Article 7, Section 4.

It is axiomatic that an unconstitutional construction of a statute will be avoided by a court if the statute is also capable of a constitutional construction or interpretation. 39 Tex. Jur. 206, Statutes, § 111. A constitutional interpretation is achieved of Article 2613(a)-3 if mineral classified land is not included in the subject matter of said Article.

A further reason exists for holding that land such as that described by you in your opinion request is neither subject to the Relinquishment Act or Article 2613(a)-3. In 1951 Article 5382(d), Sec. 15, V.C.S., was passed which specifically deals with mineral classified State lands which have been sold and reacquired by the State of Texas for the use and benefit of a State Board or Agency.

Article 5382(d), Section 15 reads in part:

"... provided further, that
should title to any lands subject
to the provisions of the Relinquish-
ment Act be acquired by any Depart-
ment, Board or Agency of the State,
such lands shall not be subject to
lease by any Board herein created,
but shall be leased in the same manner
as is now or may hereafter be provided
for the leasing of unsold Public Free
School Lands."

The special treatment of a specific subject by the Legislature
will govern and take precedence over a more general subject
and its treatment by the Legislature. 39 Tex. Jur. 150
Statutes, § 81; Ellis v. Batts, 26 Tex. 703 (1863); Townsend
v. Terrell, 118 Tex. 463, 16 S.W.2d 1063 (1929). The treat-
ment applicable to mineral classified lands (i.e. lands
subject to the Relinquishment Act) which have been re-
acquired by the State for the use and benefit of a State
department, board, or agency, is a special treatment of
a specific subject matter under the provisions of Article
5382(d), Section 15, V.C.S., and should control in regard
to the leasing for oil and gas of the mineral classified
land involved in the instant case. The leasing of unsold
Public Free School Land for oil and gas is provided for by
Article 5421c-3, V.C.S., and is handled in a different manner
than is provided for leasing State lands for oil and gas
by Article 5367 et seq. V.C.S., and Article 2613(a)-3,
V.C.S.

Wherefore, for the reasons above given, we
answer question No. 1 and No. 2 in the negative. The Board
of Directors of the Agricultural and Mechanical College of
Texas cannot execute a valid oil and gas lease on the
mineral classified State land in question.

## SUMMARY

The Board of Directors of the
Agricultural and Mechanical College
of Texas does not have authority to
execute an oil and gas lease on
mineral classified land (land orig-
inally sold by the State with a
reservation of the minerals) in which

the State of Texas, on behalf of the
Agricultural and Mechanical College of
Texas, has reacquired an undivided
interest in the surface estate.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _Milton Richardson_
Milton Richardson
Assistant Attorney General

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Morgan Nesbitt
Frank Booth
Charles Lind

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore