**ADAMS et al. v. MULLEN, County Judge, et al.**
**(No. 6836.)**

(Court of Civil Appeals of Texas. San Antonio. Nov. 1, 1922. Rehearing Denied Nov. 28, 1922.)

**1. Elections ⬦⟹33—One or more propositions cannot be combined and submitted as one at an election.**

Two or more separate and distinct propositions cannot be combined into one and submitted to the voters as a single question at an election so as to have one expression of the voters answer for all.

**2. Counties ⬦⟹178—Petition, order, and notice for bond election held not to state more than one purpose.**

A petition, order, and notice for a special election defining the purpose to be to vote bonds for "constructing, operating and maintaining graveled, paved or macadamized roads and turnpikes, or in aid thereof" held not to be objectionable as including more than one purpose, particularly in view of the fact that it is in the exact words of the constitutional and legislative provisions authorizing such elections, Const. art. 3, § 52(c), Rev. St. 1911, art. 628, as amended by Act April 5, 1917 (Laws 1917, c. 203, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 628]), and therefore not to be questioned by the courts or subject to the charge of ambiguity.

**3. Counties ⬦⟹178 — "Turnpike," as used in bond election petition, order, and notice, defined.**

The word "turnpikes," in a petition, order, and notice of an election to vote bonds for "constructing, operating and maintaining graveled, paved or macadamized roads and turnpikes, or in aid thereof," refers indiscriminately to hard-surfaced roads, and does not mean a toll road.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Turnpike.]

**4. Counties ⬦⟹178 — Order for issuance of bonds held not at variance with notice of election authorizing them.**

An order declaring the results of a special road election and ordering the issuance of bonds pursuant thereto for the construction of roads "within and for" the county is not at variance with the notice of election providing for the construction of roads "throughout" the county, since in any event the board of county commissioners are left to exercise their sound discretion in the selection of the roads they would improve.

Appeal from District Court, Jim Wells County; Hood Boone, Judge.

Petition by G. R. Adams and others for an injunction directed to R. R. Mullen, County Judge, and others, constituting the Commissioners' Court of Jim Wells County. From an order of the District Court of such County denying the petition, petitioners appeal. Affirmed.

Dougherty & Dougherty, of Beeville, and Denman, Franklin & McGown, of San Antonio, for appellants.

C. C. Forry, of Alice, and J. T. Sluder and Geo. G. Clifton, both of San Antonio, for appellees.

SMITH, J. [1] This appeal is from an order of the district court of Jim Wells county denying an injunction restraining the commissioners' court of said county from issuing certain road bonds in pursuance of an election held in that county for that purpose, in which the vote was 332 in favor of, and 110 against, the proposed bond issue. The facts set out in the application for injunction were not traversed or denied, and so the only questions presented to this court are those of law arising from the undisputed facts. The petition in response to which the commissioners' court ordered the election, the order itself, and the notice of election, defined the purpose of the election to be for "constructing, operating and maintaining graveled, paved or macadamized roads and turnpikes, or in aid thereof, throughout the county" of Jim Wells.

[2] The first contention made by appellants is that the purpose of the proposed election, as expressed in the petition, order, and notice, consisted of two separate and distinct propositions, one being "the building of public roads," and the other "the building of turnpikes or toll roads and the aiding of the building thereof by private companies." If the construction placed by appellants upon the language quoted from the order of election, etc., is correct, and the call for election did in fact unite two propositions to be voted upon in the one election, then appellants' contention is undoubtedly correct, for it is, of course, well settled that in elections of this character two or more separate and distinct propositions cannot be combined into one and submitted to the voters as a single question, "so as to have one expression of the voter answer all of them." Rea v. City of La Fayette, 130 Ga. 771, 61 S. E. 707. For instance, an election would not be valid if called for the express purpose of issuing bonds "for the construction of public roads and a jail," or of a "courthouse and drainage canals." In each instance, two separate projects, distinct and wholly different in nature and purpose, are contemplated in the language of the proposition, and thus the rule invoked by appellants would be offended.

[3] But we do not think the expressed purpose of the election in question is subject to the criticism urged by appellants. That purpose was the issuance of bonds for "constructing, operating and maintaining graveled, paved or macadamized roads and turn-

pikes, or in aid thereof." The language, tested by a common sense construction, and given an ordinary, everyday application, could well be reduced to the phrase, "for the construction, operation and maintenance of public roads" in the county. It means no less than that, and yet means no more. The funds derived from the bonds issued in pursuance of the election so called could not be lawfully expended for other than public road purposes, and related projects incident and necessary thereto, and nothing in the expressed purpose of the election could be construed into authority, even if lawful, to divert the funds to other than those purposes. Appellants urge with much ingenuity that the use of the word "turnpikes" in the purpose expressed has a peculiar significance, out of which arises an expressed purpose foreign to the building or maintenance of public roads; that it imports .a purpose on the part of the county to embark with private concerns in the construction and operation of toll roads, as distinguished from public roads; and that therefore the call for· the election embraces the double purpose of building and operating purely public roads as one project, and toll roads as another and different project. We think the contention is without any merit, and gives to the language used a highly strained, rather than a practical, construction. In its ordinary application at the present period, the word "turnpike" is used and understood as referring indiscriminately to hard-surfaced roads, and does not merely mean "toll roads," or roads on which tolls are exacted of travelers thereon, although it may yet have that technical meaning. It is obvious that the word was used in this instance, along with "graveled," "paved," and "macadamized," to distinguish the roads to be built from the old dirt roads of a period now rapidly and happily yielding to the march of intelligent highway improvement. This construction is fortified by the fact that, although in the early history of the state such roads were in many instances described as "turnpikes," the present statute, providing for the creation of private corporations organized for the purpose of building and operating roads on which tolls are exacted of the traveler, designates such corporations as "toll road corporations," and such roads as "toll roads." There is no statute in effect providing for the organization of "turnpike" corporations, nor is there in this state a current legislative definition of the word "turnpike" which inferentially or otherwise renders the word synonymous with "toll road." Be that as it may, however, a complete answer to appellants' complaint is found in the fact that the language here used in the petition, order, and notice of election is identical with that used in the constitutional and legislative provision authorizing such elections. Const. art. 3, § 52 (c); article 628, R. S., as amended by the act of April 5, 1917, c. 203, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 628), and even if it were subject to the hypercritical analysis given it by appellants, it is nevertheless the form prescribed by the constitutional and legislative authority under which this election was called, and may not be questioned by the courts. For the same reasons, the language of the call is not subject to the charge of ambiguity which appellant brings against it.

[4] In the petition, order, and notice of election, the purpose thereof was recited to be the construction, etc., of roads and turnpikes "throughout the county." In the order declaring the result of the election, and decreeing the issuance of the bonds in pursuance thereof, it was recited that the funds derived from the sale of the bonds should be expended for the construction of the roads "within and for" the county. Appellants contend that there is a material variance between these two phrases, "throughout the county," and "within and for the county," by which the voters were led to believe they were voting for one purpose; whereas, the order for the issuance of the bonds provided for a different purpose, and that the commissioners' court were preparing to take advantage of the deception and use the bond money for the purpose of constructing one highway "leading in one direct line across the county." We think this distinction sought to be drawn between the meaning of those phrases as used is ·hypercritical. From the word "throughout," the voter could not be misled into a belief that all of every public road in° the county would be graveled, macadamized, or paved, and yet in order to make appellants' criticism available this effect must be given that word as used in the call for the election. The maximum performance that could be exacted of the commissioners' court under the promise implied from the use of the word would be to lawfully expend the funds as far as they would go towards improving the roads of the county. It left to the sound discretion of the commissioners the selection of the roads they would improve, and the character of improvements they would place thereon, whether gravel, macadam, or paving. The use of the phrase, "throughout the county,"ᴴ meant no more or less than the phrase subsequently used, "within and for the county," and whether either of these phrases had been used, or not, the power was lodged in the commissioners' court, in the absence of a showing of a gross abuse of discretion, to devote the funds derived from the bond issue to the construction of the one paved highway in a "direct line across the county," of which appellants complain. Aransas County v. Pasture Co., 108 Tex. 216, 191 S. W. 553; Grayson ·County v. Harrell (Tex. Civ. App.) 202 S. W. 160, and authorities cited.

The judgment is affirmed.