**GIBSON et al. v. COUCH et al.**

**No. 2146.**

Court of Civil Appeals of Texas. Eastland.

May 30, 1941.

Rehearing Denied June 27, 1941.

Stinson, Hair, Brooks & Duke, of Abilene, for appellants.

Tom Davis, of Haskell, and Coombes & Andrews, of Stamford, for appellees.

LESLIE, Chief Justice.

Relators' application to the district court for mandamus was denied and they appeal. The application was made by R. O. Gibson, and others, trustees of Sagerton Independent School District, a body corporate; Lee Cornelius et al., patrons and taxpayers of Bunker Hill Common School District No. 39; T. L. Rowan and others, patrons and taxpayers of Center Point Common School District No. 27; John Clark, patron and taxpayer of Tanner Paint Common School District No. 34; Floyd Pilley and others, patrons and taxpayers of Vernon Common School District No. 4; R. Ramm and others, patrons and taxpayers of Flattop Common School District No. 32, Relators, complaining of John A. Couch, J. E. Mansell, Winford Pilley, R. L. Medford, E. Griffith and Matt Graham, composing the County Board of School Trustees of Haskell County, alleging in substance (1) that about March 30, 1940, in conformity with law there was held in each of said Common School Districts and in Sagerton Independent School District an election that had theretofore been ordered by said County Board of School Trustees for the purpose of determining whether or not the Common School Districts named should be grouped with the Sagerton Independent School District which would thereafter be called Sagerton Rural High School District No. 51; (2) that said districts were contiguous and the area in said district greater than 100 square miles; (3) that an election was held pursuant to said order and the result thereof showed a majority of the qualified electors in said *proposed* rural high school district voted in favor of the grouping of said districts; (4) that after the returns were made, the County School Board declared the result of the election which showed that a majority of the qualified voters in each of the five common school districts opposed the grouping and that a majority of the voters in the Sagerton Independent School District favored the grouping.

The majority vote in the Sagerton Independent School District favoring the grouping was greater than the combined majorities in the Common School Districts disapproving the grouping. It results that a majority in the proposed district favors the grouping.

When the County Board acted upon the requests of said districts to be permitted to vote upon the proposition of forming the Sagerton Rural High School District No. 51, the County Board of Trustees entered an order in part as follows:

"Now, we the County Board of Trustees of Haskell County, Texas, do hereby order an election to be held on the 30th day of March, 1940, [designating the school houses of the respective districts as polling places] * * * to determine whether a majority of the legally qualified voters of each of said districts desires to group the said districts thereby forming the Sagerton Rural High School District No. 51, it being the opinion of the Board that it would not be to the best interest of all the districts concerned to group the same thereby forming Sagerton Rural High School District No. 51 of Haskell County, *unless a majority of the qualified voters in each of said districts desired the grouping.*" (All italics ours.)

Relators here seek to compel by mandamus the County Board of Trustees to enter an order recognizing the proposed Sagerton Rural High School District No. 51, as legally established upon the face of the returns which, as stated, showed a majority in the proposed district for grouping. The respondents (County Board) insist that in their initial order requiring a majority vote in each of the districts to set up the proposed district they were acting within the authority of law, exercising a discretion confided in them by statute and that since some of the districts (five) refuse to approve the grouping, the board rightfully refused to establish the proposed district.

It is undisputed that the Common School Districts involved each had less than 400 scholastic population, and the Sagerton Independent School District had less than 250 scholastic population, and the area of the proposed rural high school exceeded 100 square miles. The Sagerton Independent School District embraced in said election order lay partly in Stonewall and Haskell Counties.

When the County Board met and canvassed the returns and found the results indicated above, it entered the further order "The Board further finds that a majority of the qualified voters in *each* of said districts did not desire the grouping as set forth in the order of the board on the 7th day of March, 1940, but that a majori-

ty of the qualified voters in *each* of *five* of said districts were opposed to the grouping. * * *

"It is, therefore, ordered by the County Board of Trustees of Haskell County that Common School Districts [naming them] and Sagerton Independent School District be not grouped to form the Sagerton Rural High School District No. 51 of Haskell County."

As we interpret the record there is no controversy here but that the County Board of Haskell and Stonewall Counties had the authority to order an election in the six districts involved and predicate the grouping of the same upon a majority vote in the proposed district as a whole. The controversy presented by this appeal arises by reason of the fact that the County Board of Haskell County predicated its election order on a majority vote for the grouping in *each* of the six districts and when five of them voted against grouping, the County Board refused to order the grouping.

In its election order, the County Board of Haskell County predicated any possible grouping of the districts upon a favorable majority vote in each of the same. When five of the districts disapproved by a majority the proposition to group the six districts the County Board refused to do so. In this and the other actions taken by the Board looking to the grouping of the districts we are of the opinion that the Board exercised a discretion vested in it by statutes as construed by the opinions of our appellate courts. Board of School Trustees of Lubbock County v. Woodrow Ind. Sch. Dist., et al., Tex.Civ.App., 90 S.W.2d 333, 334; Chap. 19A, Vernon's Texas Civil Statutes, 1925, Arts. 2922a, 2922c.

In the Lubbock case the County Board designated certain districts to be grouped and ordered an election "to determine whether or not it is favored by a majority vote in *each and all* of such districts that they be grouped together into a rural high school district, and any district failing to approve such grouping by a majority vote within the district will be eliminated from such group."

·In that case, the Union Common School District voted against the grouping. The County Board of Lubbock County canvassed the returns, declared the results and refused to group the districts into the proposed district. Concerning the Board's

actions the opinion of the court states: "Therefore, in accordance with its pre-election promise, and with its claimed conditional pre-election order, the board refused to create such rural high school district, Union having voted a majority against it." The question propounded by the appeal in that litigation is stated thus in the opinion: "Did such board have the legal right to place therein the condition mentioned above in its pre-election order?" In effect, the opinion answers the question in this language: "The district voting against said grouping was remotely situated from the center of the proposed district. It was nearer the Slaton High School. Did the statute intend that by a majority vote, remote territory could be taken in despite the judgment of the county board that such action was unwise? Has the statute placed no limitation upon arbitrary action of this kind? We think plainly it has, and that this was one of the purposes of lodging with such board plenary power in respect to such matters." It is also said in that opinion: "The board's action comports with the plainest principles of honesty and fair dealing. * * * It did not have to call an election."

It was finally held in the case referred to "that the initial discretion of the board to create the proposed district being absolute, it might exercise same upon a named condition, and that it appearing * * * that same was so exercised, * * * the trial court erred in attempting to control such discretion, by granting the writ of mandamus prayed for * * *. 28 Tex.Jur. pp. 574, et seq; 38 C.J. p. 689, 690."

Upon the question of discretion vested by the Legislature in the County Board of Trustees for the creation of rural high school districts, see, also, County Board of School Trustees v. Gray, Tex.Civ.App., 142 S.W.2d 697; Wise Common School Dist. No. 2 v. Castro County School Trustees, Tex.Civ.App., 141 S.W.2d 1028; Countz v. Mitchell, Tex.Civ.App., 48 S.W. 2d 803; Miller v. School Trustees of Milam, Tex.Civ.App., 52 S.W.2d 806.

■ In the instant case, the County Board of School Trustees simply failed or refused to group the six districts when some of them failed to vote for grouping. In doing so, the Board kept faith with the districts as evidenced by the terms of the election order predicating grouping on a favorable majority vote in each of said districts. The Board was under no legal duty to group the districts and owed to Relators no such legal duty enforcible by mandamus. The law (Art. 2922c) says the Board may group on a majority vote of a proposed district, but nowhere does it attempt to take away the discretion originally lodged in the Board in matters of forming rural high schools. Since the Haskell County Board in harmony with its pre-election order, and in the exercise of its undoubted discretion refused to group the six districts, it follows that the relators are not entitled to the writ of mandamus prayed for.

■ In what has been said we are not to be understood as holding that although the law prescribed one or more conditions upon the exercise by the County Board of School Trustees of a power delegated to it, such Board may substitute another condition or other conditions and yet exercise such power. If the Board exercises the power conditionally delegated to it by law, it must, of course, exercise it in compliance with the conditions prescribed by the law.

Our conclusions in part may be somewhat differently stated thus: The record before us shows expressly and conclusively that the Board never decided to exercise its discretion to group the districts. On the contrary, the Board declared its decision not to group the districts, unless a majority of the voters in each district were in favor of it and by their vote so indicated. Since, as shown by the returns of the election, a majority of each district was not in favor of grouping, it is plain that the Board of School Trustees have not determined to group the districts, but have determined not to do so. Nothing has happened to change or take away the discretionary nature of the Board's power to group. It may be conceded that the result of the election, although not meeting the condition upon which the Board had in effect indicated it would order the grouping, yet the result, nevertheless, was such as to meet the condition which the law prescribed as a limitation (majority in the proposed district) upon the Board's power to order the grouping. That, however, is of no controlling importance. It is not a question of the power of the Board to group the districts, but the real question is: May the Board be compelled to exercise its power and group the dis-

tricts when it has never determined that that should be done, but, on the contrary, had in effect determined that it should not be done? The Board had expressed its conclusions both in the order calling the election and in announcing the result thereof, that it would not be to the best interest of the districts concerned to . be grouped if a majority of the qualified voters in a given district disapproved the grouping.

 The case is believed to be governed by the principle that the discretionary powers of public officers may not be commanded to be exercised in a particular way in a mandamus proceeding.

The appellants seek to reverse the judgment of the trial court principally upon the opinions in Florey Common School Dist. No. 5 v. Board of School Trustees of Andrews County, Tex.Civ.App., 126 S. W.2d 536; Trinity Ind. School Dist. v. District Trustees, Tex.Civ.App., 135 S.W. 2d 1021, and Millhollon v. Stanton Ind. Sch. Dist., Tex.Com.App., 231 S.W. 332. We have carefully examined these opinions, but we do not believe they are in point or controlling under the undisputed facts and circumstances presented by this record. It is deemed unnecessary to lengthen this opinion by a further discussion of those authorities.

Other questions presented become immaterial, and for the reasons assigned, the judgment of the trial court is affirmed.