**Milton D. RICHARDSON et al.,**
Appellants,

v.

**CAMERON COUNTY, Texas, Appellee.**

No. 12810.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 26, 1955.

Rehearing Denied Feb. 23, 1955.

Rankin, Kilgore & Cherry, Edinburg, for appellants.

Kelley, Looney, McLean & Littleton, Jackson Littleton, Edinburg, for appellee.

PER CURIAM.

The controlling question in this case is whether or not the County of Cameron has been authorized by appropriate legislative action to condemn land lying within the boundaries of Hidalgo County, for the use of an agency of the federal government, in constructing the Anzalduas Dam on the Rio Grande as a part of the Lower Rio Grande Valley Flood Control Project. The court below held that Cameron County was so empowered and rendered a declaratory judgment accordingly.

■ The circumstances surrounding this litigation are somewhat unusual. After the federal agency involved, namely, the International Boundary and Water Commission had requested the County of Cameron to acquire the certain lands and rights of way for the Anzalduas project and said county had commenced certain condemnation proceedings, the commissioners' court of Hidalgo County took active steps to ·forestall and prevent this action, with the result that this suit was filed in County Court at Law of Hidalgo County, the court having jurisdiction of such condemnation proceedings. The petition of Cameron County did not expressly name Hidalgo County, but only its county judge and commissioners. There is some suggestion that an appeal to this Court was not properly perfected because no appeal bond was filed. The petition complained of official actions of the commissioners' court of Hidalgo County and asserted in substance a claim or demand against Hidalgo County. We are therefore of the opinion that an appeal was perfected to this Court by giving notice thereof. Article 2276, Vernon's Ann.Tex.Civ.Stats. Bexar County v. Linden, Tex.Civ.App., 205 S.W. 478, reversed on other grounds, Bexar County v. Linden, 110 Tex. 339, 220 S.W. 761. No other suggestion of lack of jurisdiction of the trial court or this Court is contained in the briefs. Appellants' sole and only point raised the question above stated.

The history of the effects of the delta counties of the Rio Grande to control and alleviate disastrous floods in the lower reaches of the river is a long and interesting one. However, for the necessary factual bases of this litigation we may paraphrase a portion of appellants' brief and make the following statement:

On October 14, 1930, and November 14, 1931, appellant, Hidalgo County, entered into contracts with the United States to furnish the latter such lands or interest in lands as might be required for the establish-

ment, maintenance and operation of a federal flood control project in Hidalgo County. Cameron County had entered into similar agreements on October 13, 1954, and November of 1931.

Thereafter, both Hidalgo County and Cameron County complied with the request of the United States and furnished such land or interest in land requested by the United States. The International Boundary and Water Commission, an agency of the government of the United States, requested of Hidalgo County, land and interest in land lying wholly within Hidalgo County for the Anzalduas Dam and the Mission inlet. Because the people of Hidalgo County, in two elections called for that purpose, voted against the furnishing of said lands, Hidalgo County refused to comply with said request. Thereafter, on August 14, 1953, the International Boundary and Water Commission made a request of Cameron County to furnish said land. The commissioners' court of Hidalgo County took the position that Cameron County · could not, through condemnation proceedings, acquire land or interest in land in Hidalgo County for the purpose of transferring and conveying the same to the United States of America. Cameron County thereupon instituted this suit.

The power of eminent domain is an inherent and insuperable adjunct of sovereignty. Byrd Irrigation Co. v. Smythe, Tex.Civ.App., 146 S.W. 1064; 16 Tex.Jur. 560, Eminent Domain, § 2. A county as such, not being a sovereign, has no inherent powers of eminent domain. 1 Nichols, Eminent Domain, 338, § 2.32. A county may, however, be designated as the agency of the State to exercise the power of eminent domain for certain specified purposes. The Legislature of the State of Texas could lawfully provide that Cameron County should act as an agency of the State of Texas to acquire land in Hidalgo County, or any other political subdivision of the State, for that matter. As stated by appellants, the question which this Court must determine is "whether or not the State of Texas *has, through the Legislature,* dele-*gated and authorized Cameron County* to condemn land or interest in land in Hidalgo County for the purpose of transferring and conveying the same to the United States for its use in the construction, maintenance and operation of a flood control system to be owned by the United States."

The applicable and controlling statute was passed in 1934 by the 43rd Legislature at its Fourth Called Sessions, p. 71, ch. 29, and is designated in Vernon's Ann.Tex.Civ. Stats. as Article 7880–147v. In Vann v. Cameron County, Tex.Civ.App., 124 S.W.2d 167, it was held that this statute authorized Cameron County to take private lands under the power of eminent domain for flood control purposes. Perhaps because the question was raised in the Vann case, the Legislature placed this power of condemnation beyond all peradventure by the passage ·of House Bill No. 250 in 1939. See, Acts 1939, Acts 46th Leg. p. 482, Article 5244a–2, Vernon's Ann.Tex.Civ.Stats.

Article 7880–147v, Section 1, reads as follows:

"Any county one or more of the boundaries of which is coincident with any part of the international boundary between the United States and Mexico, or any county contiguous to any county · ·of such described class, by resolution of the County Commissioners' Court of such county, in consideration of benefits of flood control work to be performed in any county of said class by the Unit-·· ed States of America, may agree (1) to indemnify and save harmless the ·United States of America, its officers, agents and employees, on account of damage or claims to damage by whomsoever asserted, arising out of or connected with entry upon, occupancy, construction upon or exercise of rights in and to lands or rights in lands situated in one or more of said class of counties by the United States, its officers, agents and employees, in connection with construction, reconstruction, alteration, extension, improvement, maintenance and operation of flood control works, or works in connection therewith· or

incidental thereto, by the United States; (2) to procure such release and waivers of claims and to make such showing as to title being vested in such county to lands and rights in lands situated in any county of said class, needed for such flood control works, or works in connection therewith or incidental thereto, as may be required by the United States; and (3) to acquire and, without monetary consideration therefor, convey to the United States upon request therefor the title to any such lands of rights therein, situated in any county of said class, necessary for such flood control works."

 It being settled that "Any county one or more of the boundaries of which is coincident with any part. of the international boundary between the United States and Mexico, or any county contiguous to any 'county of such described class," may exercise the power of eminent domain, Article 5244a–2; Vann v. Cameron County, Tex.Civ.App., 124 S.W.2d 167, the next matter to be determined is the territorial extent of this power. The first numbered clause of the section, "to indemnify and save harmless", refers to "lands or rights in lands *situated in one or more of said class of counties*". The second clause, referring to the procurement of releases and waiver of claims, likewise refers to "lands and rights in lands *situated in any county of said class*". Similarly, the third clause authorizes any county coming within the provisions of the Act "to acquire and, without monetary consideration therefor, convey to the United States upon request therefor the title to any such lands of rights therein, *situated in any county of said class,* necessary for such flood control works." It is clear that the phrase, "any county of said class" comprehends "Any county one or more of the boundaries of which is coincident with any part of the international boundary between the United States and Mexico". In the very next phrase appearing after the words quoted in the fore part of the Act, reference is expressly made to "such described class". It is probable that in the

clauses mentioned above, the Legislature intended to include a border county and a county contiguous to a border county within the phrase, "any county of said class", but it is certain that border counties are comprehended and both Hidalgo and Cameron Counties border on the Rio Grande, which is in the international boundary line between the Republic of Mexico and the United States of America. If we substitute the specific for the generic terms of the statute, it seems reasonably clear that such statute provides that Cameron County (which borders upon the Republic of Mexico) may acquire under the power of eminent domain if necessary, any such lands or rights therein, situated in Hidalgo County (a county of said class, namely, one bordering upon the Republic of Mexico) which are necessary for such flood control works.

Not only is this construction in accord with the strict literal wording of the Act itself, but it is in accordance with the evident and obvious purpose of the Legislature, which was to cooperate with the federal government and its agencies in constructing and operating an efficient flood control system in the Lower Rio Grande Valley. Flooding rivers are no respecters of county lines. Suitable dam sites are determined by physical and topographical characteristics and not by arbitrarily fixed boundaries of political subdivisions. It is possible that the construction of a dam at a particular site would be of no material or practical value to the county within which such site was located, yet such dam and the resultant impounding of waters might be of inestimable value to those living in counties nearer the mouth of the river. In view of these circumstances it would seem unlikely that the Legislature would arbitrarily restrict the power of eminent domain to the one particular county in which the required land was located. And, as we construe the controlling Act, there is no such restrictive language contained therein.

██ The exercise of the power of eminent domain is not necessarily restricted

to the territorial limits of the agency. Lower Nueces Fresh Water Supply Dist. v. Cartwright, Tex.Civ.App., 274 S.W.2d 199. While in the case of municipalities such as cities, their powers, including that of eminent domain, are usually restricted to properties within their boundaries, but this is not the unvarying rule. White v. Romney, 69 W.Va. 606, 73 S.E. 323. It is stated by McQuillan that:

"In some cases this power (of condemnation) has been implied. Accordingly, while there is no settled rule in respect to this question, it would seem that the rule supported by the better reasoning is that if the power exists to construct public works or improve property outside the municipal limits, and the statute or charter expressly or by necessary implication authorizes the condemnation of property within the corporate limits for such purposes, then the municipality is impliedly authorized to condemn property outside the limits for such purposes." 11 McQuillan, Municipal Corporations, 3d Ed., 396, § 32.66.

In the present case, however, implication need not be relied upon, as the literal wording of the statute supports the trial court's ruling.

Appellants present a final contention that if Article 7880–147v be construed as authorizing a county to condemn lands lying without its boundaries (and we have so construed it) then such grant of extra-territorial authority was revoked by the passage of Senate Bill No. 433, in 1941. See Acts 47th Leg. p. 239, ch. 168, Article 5248e, Vernon's Ann.Tex.Civ.Stats. The 1941 Act is general in its terms, apparently adopted in furtherance of the defense effort immediately preceding World War II. It does not mention the various specific flood control Acts and hence makes no provision for repeal of any of the sections thereof. Repeals by implication are not favored, particularly so when the alleged repealing Act is general in nature and it is sought to modify or strike down some specific provision contained in a special or particular Act. Ellis v. Batts, 26 Tex. 703; City of Laredo v. Martin, 52 Tex. 548; Flowers v. Pecos River Ry. Co., 138 Tex. 18, 156 S.W.2d 260; State v. The Praetorians, 143 Tex. 565, 186 S.W.2d 973, 158 A.L.R. 596.

Appellants' point of error is overruled and the judgment of the trial court affirmed.