J. W. ROYALTY et al., Appellants,

v.

Dr. W. D. NICHOLSON, Appellee.

No. 15034.

Court of Civil Appeals of Texas.

Houston.

Jan. 19, 1967.

Rehearing Denied Feb. 9, 1967.

C. Wayne Holder, Freeport, for appellants.

Vinson, Elkins, Weems & Searls, Donald L. Howell, Howard W. Mays, Robert R. Randolph, Houston, Evans & Gillies, Angleton, for appellee.

Majority Opinion

WERLEIN, Justice.

This suit was brought by appellants to contest a schoolhouse bond election held in Brazosport Independent School District of Brazoria County, Texas, on June 4, 1966. The School District has only one high school which is located in Freeport. Sometime before the election a citizens committee was appointed by the president of the Board of Trustees to consider the alternatives for meeting an acute shortage of classrooms in the District, especially on the high school level. The alternatives were: (1) to replace the present high school in Freeport with a new central high school in the Lake Jackson-Clute area. The present Freeport high school would be converted to a junior high school for three

or four years and then reactivated as a high school; (2) to expand the size of and continue the present single central high school in Freeport; (3) to repair, enlarge and continue the present high school at Freeport and also construct a second high school in the Lake Jackson area. The first alternative of the citizens committee was submitted to the electorate in a school bond election on April 2, 1966, and was defeated.

The School Board decided to submit the other two alternatives at an election on June 4, 1966, pursuant to a petition submitted to the Board on May 24, 1966, requesting a bond election. The petition requested the Board to submit two propositions. Proposition No. 1 was to authorize the Board to issue $3,860,000.00 District bonds "for the purpose of purchase, construction, repair and equipment of public free schools within the limits of said District, and the purchase of the necessary sites therefor [including (1) additions to present Brazosport high school to increase the permanent facilities to 2,600 student capacity; (2) a new elementary school, and (3) additions to elementary and junior high schools]" and the levy of the tax in payment thereof. Proposition No. 2 was to authorize the Board to issue $5,998,000.00 District bonds "for the purpose of the purchase, construction, repair and equipment of public free school buildings within the limits of said School District, and the purchase of the necessary sites therefor [including (1) a new 2,000 student capacity high school in the Clute-Lake Jackson area; (2) additions to present Brazosport high school to increase permanent facilities to 1,400 student capacity; (3) a new elementary school, and (4) additions and improvements to elementary and junior high schools]," and the levy of the tax in payment thereof.

The petitioners requested that if in said election each of said propositions "shall receive a greater number of votes 'For' than 'Against' such proposition, the proposition, receiving the greater number of votes 'For' such proposition shall be declared adopted, and bonds shall not be issued nor shall taxes be levied pursuant to the other proposition. The School Board granted the petition as requested by the petitioners and set June 4, 1966 as election day. Notice of the election was given by posting exact copies of the order calling the election, which were posted on the morning of May 25, 1966 between the hours of 8:30 to 9 o'clock at three public places in the School District. The election was held on June 4, 1966, and the returns were duly made to the Board of Trustees, who met in regular session on June 7 with all members present, and declared that Proposition No. 1 received 2616 votes "For" and 2321 votes "Against", and Proposition No. 2 received 2656 votes "For" and 2367 votes "Against"; and that since Proposition No. 2 received more favorable votes than Proposition No. 1, the election resulted favorably to Proposition No. 2, and for the issuance of bonds and the levy and collection of taxes in payment thereof. The Board further declared "that said election has resulted unfavorably to the issuance of the schoolhouse bonds described in Proposition No. One and said bonds shall not be issued."

Thereafter appellants filed this suit, alleging among other things that the notice of the election was improperly given; that certain voters were not qualified to vote because their names were not on the tax rolls; that the tax assessor-collector failed to furnish election judges a certified list of taxpayers; and that the Board was not empowered to submit two propositions and provide in its order calling the election that only the proposition receiving the greater number of "For" votes would carry.

The trial court entered judgment on October 12, 1966 declaring that the June 4, 1966 special bond election resulted favorably to the issuance of the bonds described in Proposition No. 2 and that the Board was authorized to issue the bonds described in Proposition No. 2 and levy taxes in payment thereof. No findings of

fact or conclusions of law were requested or filed.

■ Appellants contend that the court erred in finding and holding that notice of the election was properly posted, since less than ten full day's notice of such election was given, and secondly, that the court erred in concluding that only ten days' notice was required by law. They have no point complaining that there was any failure to timely begin absentee voting. They do complain of the failure to timely post notices. Article 2785, Vernon's Annotated Texas Statutes, is the only statutory provision that purports to specify the notice required in a school bond election. It expressly provides for ten days' notice. It is appellants' contention, however, that the Texas Election Code, by providing for twenty days' absentee voting, repealed by implication the special notice provision of Article 2785. Article 4.05 of the Texas Election Code, V.A.T.S. provides, however, that in any "special election specially provided for by the laws of this State, the notices of the election shall be given in compliance with the laws governing said elections respectively." There is no provision in the Election Code concerning notice other than Article 4.05. Our Supreme Court, in Wallis v. Williams, 101 Tex. 395, 108 S.W. 153 (1908), has clearly distinguished between general elections and special elections which are provided for by the Special Laws of this State. It cannot be questioned that the election in question was a special election specially provided for by the laws of Texas.

The school bond election was held pursuant to Article 2784e–1, V.A.T.S., which provides that no bond shall be issued thereunder until authorized by an election and that the General Laws applicable to school districts shall govern the method and manner of calling and holding of tax and bond election. In Wiederkehr v. Luna, 297 S.W.2d 243, Tex.Civ.App., Waco 1956, n. w. h., the court held that Article 2785, V.A.T.S., was the general law referred to in Article 2784e–1. Such article may be considered as the general law with reference to school district elections, and yet be considered a special law in that it is limited in its scope to school district elections and does not embrace elections generally. There is no statute other than Article 2785, which specifies the notice required to be given in schoolhouse bond elections. See Wilkerson v. Otto, 289 S.W.2d 411, Tex. Civ.App., Beaumont 1956, n. w. h. Article 2785 provides that: "said elections shall be held and conducted as provided by law for general elections, except as provided herein." It expressly provides as to the notice required to be given.

In Baker v. Scranton Independent School Dist., 287 S.W.2d 210, Tex.Civ.App., Eastland 1956, n. w. h., which was decided after the enactment of the Texas Election Code, it was held that ten days is the notice required in school district elections for the issuance of bonds. The contestants asserted that notice was not posted as required by law. The court said:

"We cannot agree with this contention. Article 2785, Vernon's Annotated Civil Statutes, provides that elections within school districts for the issuance of bonds must be publicized by posting 'notices thereof in three (3) places in the district for ten (10) days prior thereto * * *.' These notices were posted within the district for the length of time provided by the statute."

Furthermore, the Texas Legislature has at several times reaffirmed its intention to preserve the provisions of Article 2785. The absentee voting provisions were passed in 1951 as Article 5.05 of the Texas Election Code. Thereafter in 1953, the Legislature re-enacted all of Article 2785, as it exists today, without changing the notice provisions. In 1957 the Legislature enacted Article 2802i–30, and in Section 3 thereof, by reference affirmed Article 2785 stating: "The election for the additional maintenance tax may be called without the necessity of a petition, but shall

in all other respects be held in the manner provided by Article 2785, Revised Civil Statutes of Texas, 1925, as amended, or as hereafter amended."

In 1959 the Legislature in connection with the enactment of Article 2802i–31 again recognized Article 2785 in providing that the election shall in all respects, other than the necessity of a petition, be held in the manner provided in Article 2785. Thus the courts and the Legislature have affirmed at several different times the provisions of Article 2785 governing school district elections after the amendment of the absentee voting provisions of the Election Code.

■ We do not agree with appellants that Article 2785 providing for ten days' notice by posting prior to the school bond election has been repealed by implication. The matter of giving notice of an election and the provisions referring to absentee voting are different subjects. In Cole v. State, 106 Tex. 472, 170 S.W. 1036 (1914), our Supreme Court said: "It may well be doubted whether any question of an implied repeal * * * really arises * * *. It is not sufficient that there be a discrepancy between different parts of a system of legislation upon the same general subject; there must be a conflict between different statutes upon the same specific subject."

In Jefferson County v. Board of County and District Road Indebtedness, 143 Tex. 99, 182 S.W.2d 908 (1944), the court said:

"Ordinarily, a general repealing clause of inconsistent Acts does not, when contained in a general Act, operate to repeal a local or special Act, even though the provisions of the two Acts are in some respects inconsistent. 59 C.J. 904. The intention to repeal special Acts embodying conflicting provisions must be clearly evidenced." [citing authorities]

■ The law is well settled that a general law will not ordinarily be held to repeal by implication a particular or special one upon the same subject. Flowers v. Pecos River R. Co., 138 Tex. 18, 156 S.W.2d 260 (1941); Ellis v. Batts, 26 Tex. 703 (1863); Richardson v. Cameron County, 275 S.W.2d 709, Tex.Civ.App., San Antonio 1955, n. w. h.

■ It is our view that the trial court did not err in holding that the notice of the election was duly and properly posted since there was an actual or substantial compliance with Article 2785, and appellants have not shown that the results of the election were in any way affected by the notices being posted between the hours of 8:30 and 9 o'clock a. m. on May 25, 1966, instead of an earlier hour on said date. There is, of course, no contention that the Trustees of the School District by not sooner posting such notices were undertaking to defraud or deceive the voters in the District. Nor do appellants contend that any voter was deprived of a vote by the posting of the notices between 8:30 and 9 a. m. on May 25, 1966, instead of at midnight on May 24, or instead of posting them by 7:45 a. m. on May 25, 1966, at which time the clerk's office was to open each day for absentee voting under the order of the School Board.

■ Generally in computing the time of elections, the day of posting is included and the date of the election is excluded. Therefore, June 4, 1966, would be excluded. Counting back from such date it will be seen that the notices were posted on the tenth day prior to the date of the election. In Pollard v. Snodgrass, 203 S.W.2d 641, Tex.Civ.App., Amarillo 1947, error dism., involving a local option election contest, the applicable article required notice to be posted "for at least six days before the day of the election." Notice was posted during the day of December 1, 1946 for an election on December 7, 1946. The court said:

"It has been held * * * that a substantial compliance with the procedural requirements concerning an election is sufficient unless it is shown that failure strictly to comply with the letter of the

law materially interfered with the election and the right of the electors freely to participate therein. The election notices were posted some time during the day of December 1, 1946. If they had been posted prior to midnight November 30, the posting would have complied literally with the provision of the statute. Since, in that event no resident of the precinct would probably have seen them before sunup the next morning, the difference, in practical effect, between the time of actual posting and that provided by the statute could not have been more than a few hours. We think, in view of the fact that no voter was deprived of his privilege of suffrage by virtue of the short delay in posting the notices, the act of the clerk in posting them on December 1, 1946, was a substantial compliance with the statute, * * *."

It is our view that there was substantial compliance with Article 2785, and that the election was not invalid, especially since appellants have not shown that any qualified voters whose votes would change the result of the election would have voted if a few hours longer notice had been given. See Baker v. Scranton Independent School Dist., supra. Appellants assert only that three absentee voters were deprived of notice. We have read the testimony of these witnesses and cannot say that the court erred in not finding that they would have voted if the notices had been posted for a longer period. Furthermore, since appellants did not request findings of fact or conclusions of law, the trial court's judgment implies all necessary fact findings in support of the judgment, and this Court will presume that all conflicting issues of fact were found in favor of appellee. Petersen v. Robinson Oil & Gas Co., 356 S.W.2d 217, Tex.Civ.App., Houston 1962, n. w. h.; Globe Chemical Co. v. Walla, 328 S.W.2d 341, Tex.Civ.App., Houston 1959, n. w. h.; LaForce v. Bracken, Tex.Civ.App., 163 S.W.2d 239, aff'd 141 Tex. 18, 169 S.W.2d 465.

Appellants assert that the order calling the election was not in conformity with the law since the order of the Board of Trustees submitted dual issues or propositions with more than one subject submitted in each proposition. It is our view that the submission of two or more schoolhouse projects in one proposition at a bond election is permitted by Article 2784e–1, V.A. T.S., especially since Section 1, par. (2) of such Article allows an independent school district to issue bonds and levy ad valorem taxes for "the purchase, construction, repair or equipment of public free school buildings within the limits of such districts and the purchase of the necessary sites therefor." Each of the two propositions submitted in connection with the schoolhouse bond election shows that the purpose of the election was the purchase, construction, repair and equipment of public free school buildings within the limits of the school district and the purchase of the necessary sites therefor. Thus, the purpose expressed in each of said propositions substantially conforms with the purpose set out in Article 2784e–1 for which a school district may issue bonds. Article 2786, V.A.T.S., provides in part that whenever the proposition to issue bonds is to be voted on in any independent school district, the petition, election order and notice of election must distinctly specify among other things the purpose for which the bonds are to be used. This was done in the instant case. It is true that the law is that a separate proposition must be placed on the ballot for each distinct and independent object or purpose for which the indebtedness is contemplated. It is equally true, however, that it is permissible to include several structures or units in one proposition if they serve identical purposes in differing areas, such as two school houses, and have a natural relationship to each other. See Kellams v. Compton, Mo.S.Ct., 206 S.W.2d 498, 4 A.L.R.2d 612, and annotation thereunder at page 622; 79 C.J.S. Sec. 366(2), p. 96.

In Adams v. Mullen, 244 S.W. 1083, Tex.Civ.App., San Antonio 1922, error ref., the court held that bonds voted for the purpose of construction, operating, and maintaining graveled, paved or macadamized roads and turnpikes, or in aid thereof, were not objectionable in submitting two or more separate and distinct purposes in a single proposition. There is a similar holding in Garcia v. Duval County, 354 S.W.2d 237, Tex.Civ.App., San Antonio 1962, error ref., n. r. e. In Wilkerson v. Otto, supra, the court upheld the election results in connection with a proposition submitted "for the purpose of the purchase, construction, repair and equipment of public free school buildings within the limits of such district, and the purchase of the necessary sites therefor."

Appellants assert that the Board of Trustees did not have the power to provide in their order pursuant to the petition submitted that only the proposition receiving the greater number of "For" votes would be the one adopted. The court found that Proposition No. 2 received more favorable votes than Proposition No. 1, and authorized the issuance and levy and collection of taxes as provided in Proposition No. 2. Both propositions carried. We are not concerned, however, primarily with Proposition No. 1. This suit was not brought by appellants to require the School Board to issue and sell bonds under Proposition No. 1. We are not called upon to consider what legal principles may apply had they done so or whether it may now be necessary for the Board to submit a proposition to the electorate cancelling and annulling the result and affirmance of Proposition No. 1 because the issuance of bonds pursuant to Proposition No. 2 would eliminate the need and necessity for the issuance of bonds pursuant to Proposition No. 1.

Even if we assume that the Board's position with respect to not issuing bonds in connection with Proposition No. 1 is untenable, there seems to be no good reason why such fact should result in invalidating the will of the electorate with respect to Proposition No. 2 which passed with a larger number of favorable votes. It is our view that the power of the Board of Trustees to contract with the voters not to issue the bonds described in Proposition No. 1 is immaterial and irrelevant to the power of the Board to issue bonds described in Proposition No. 2 which carried by a majority vote, and that the wording of the pre-election order with respect to issuing bonds for carrying out Proposition No. 2 does not vitiate the authority of the Board to issue bonds therefor. There is nothing in the record to show that the manner of submission of the propositions affected the results of the election.

In Moore v. Coffman, 109 Tex. 93, 200 S.W. 374 (1918), it was held that where the commissioners court in submitting bonds for the purpose of building two bridges across the Brazos River at designated places, and the election carried, the court was required to keep faith with those whose will the election expressed, and therefore could not construct the bridges at places other than the designated places. The court said:

"In such cases it is only fair to the voters in the election called to determine the matter to inform them in advance of the intended location, so that the actual merits of the given proposal, into which the question of location may largely enter, shall decide the contest. When this is done, the location is a part of the vote and is entitled to an equivalent protection."

There was a similar holding in Black v. Strength, 112 Tex. 188, 246 S.W. 79 (1922). In Board of School Trustees of Lubbock County v. Woodrow Independent School District, 90 S.W.2d 333, Tex.Civ.App., Amarillo 1935, n. w. h., the commissioners court provided in a pre-election order that if a majority of voters in any one or more of the common school or independent school districts voted against the creation of the rural high school district in the election,

the rural high school district would not be created even though a majority of all persons voted in favor of the proposed grouping. Such order was made despite the fact that Article 2922c required only a favorable vote of all voters in the proposed rural high school district and did not require a favorable vote by the voters in each separate district. The court said:

> "Accordingly, we hold that the initial discretion of the board to create the proposed district being absolute, it might exercise same upon a named condition, and that it appearing here that same was so exercised, as conclusively appears from the corrected minutes of said board, the trial court erred in attempting to control such discretion, by granting the writ of mandamus prayed for by appellees."

See also Gibson v. Couch, 153 S.W.2d 288, Tex.Civ.App., Eastland 1941, n. w. h.

■ The Attorney General of the State of Texas, Gerald C. Mann, issued Opinion No. O–2088, in response to a request for an opinion as to the effect that an order adopted by the Board of Trustees of Gonzales Independent School District on the same date the Board adopted an order calling a bond election, would have on the election results. The pre-election order adopted by the Board covenanted and agreed that the bonds of the district, if voted, would not be issued unless the district was able to secure a grant from the Public Works Administration. The election carried; however, the Public Works Administration denied the district's request for a grant. The Attorney General's opinion was to the effect that since the Board contracted not to issue the bonds unless the district received a P. W. A. grant, they could not legally issue the bonds unless the grant was secured. The Attorney General in his opinion stated, "Any other rule would tend to undermine public confidence in the acts of the public officers." We recognize that the Attorney General's opinions are not in any man-

ner controlling, but they are entitled to great weight unless clearly wrong. San Antonio Union Junior College District v. Daniel, 146 Tex. 241, 206 S.W.2d 995 (1947).

In another opinion of the Attorney General of Texas, Gerald C. Mann, No. O–2667, it was stated:

> "In view of the foregoing quotation we think it would not be unlawful to annex the further condition that the bonds should not issue except upon the happening of some named event. The result thus obtained would have the effect and force of a contract. See Black v. Strength [112 Tex. 188], 246 S.W. [79] 75; 19 RCL, pages 1163 and 1164; Roane County Court vs. O'Brien [95 W. Va. 32], 122 S.E. 352 and 355; also Fletcher vs. Ely, 53 S.W.(2d) 817 (Writ Refused). We, therefore, conclude that if the bonds are voted for the straight statutory purpose, that is, 'for construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof,' that the proceeds be used for the construction of State designated highways, and that the issuance thereof is conditioned upon House Bill 688 being amended in a manner so as to permit the participation of such bonds to the extent of 100% in the State gasoline tax fund allocated to the Board of County and District Road Indebtedness, that such bonds would not be rendered ipso facto void because of the inclusion of such named condition in the proceedings. We conclude further that without the happening of the last stated contingency the bonds could not be lawfully issued."

■ It is our view that it is not necessary for this Court to determine whether the condition imposed in the pre-election order of the Board of Trustees may prevent the issuance of bonds for carrying out Proposition No. 1. We are here concerned with the carrying out of Proposition No. 2 and the issuance of bonds therefor, and

hold that such provision in the pre-election order does not invalidate Proposition No. 2 and the issuance and sale of bonds pursuant thereto.

■ We are of the opinion that the court did not err in holding that the failure of the tax assessor-collector of the Brazosport Independent School District to comply with the provisions of Article 5.04 of the Texas Election Code by providing a certified list of duly rendered property owners, was not a ground for declaring the election void; since such provision is directory and such failure did not affect the results of the election. In Franklin v. Wilson, 242 S.W.2d 820, Tex.Civ.App., Eastland 1951, mandamus overruled, where it was contended that the votes cast by the voters in the election in question were illegal because the names of such voters did not appear upon the assessment rolls of the Town of Lake June, Texas, the court held that the tax assessment roll provided for in said statute is merely directory and provided for the purpose of aiding the county judge and election judges in determining who owns property within the area and are thereby eligible to vote in the election. It is not a mandatory provision that would disqualify citizens in the area. The court said: "We hold that if a voter is otherwise qualified under the law, that the failure of his name to appear upon the tax assessment roll would not destroy his right to vote in the election to abolish the city."

In Border v. Abell, 111 S.W.2d 1186, Tex.Civ.App., Galveston 1937, n. w. h., the court said:

" 'In the absence of any allegations or proof of fraud or misconduct, or that the failure to comply with the provision of the statute stating that the tax collector shall furnish to the election judges, in an election of this character, a certified list of the owners of real estate in the county, who have rendered the same for taxes, affected the fair result of such election, the failure to so comply with

such provision of the law is immaterial and does not affect the validity of the election.' "

The court in Baker v. Scranton Independent School District, supra, stated that the fact that the election officials did not have a certified list of the property owners as required by Article 5.04 did not invalidate the election unless there was fraud or serious misconduct and the irregularities changed or contributed to changing the result of the election. There is no evidence of fraud or misconduct or anything to indicate that the failure of the tax assessor and collector to furnish the certified list of taxpayers changed the results of the election in the instant case.

Appellants assert that there were some 42 voters who were not qualified voters as owners of taxable property within the district which had been duly rendered. They also contend that the court erred in finding that there were only 9 resident electors who voted in the election that did not own taxable property within the district. In their first category of voters which they contend were not qualified, they have listed 9 persons. In such category they listed Mr. Milton W. Walker, although there is no Mr. Walker whose vote was challenged. In the second category they list 26 voters, two of whom are not listed in their seventh point of error, thus reducing such number to 24. In their third category they list 7 voters, but they list Mr. and Mrs. George B. Stevens twice and hence such number should be reduced to 5. F. P. Davis, who is listed as a challenged voter in appellants' seventh point of error, is not listed in any of appellants' three categories. The fourth category whom the trial court held were not qualified includes those persons who were purchasing their property on a contract of sale, and whose contracts had never been recorded.

Appellee admits and the evidence shows that 29 of the 40 challenged voters listed in appellants' Point 7 voted for Proposition

No. 2 and that they either did not vote on Proposition No. 1 or voted against Proposition No. 1. The other 11 voters (omitting names duplicated), including Mr. Davis, did not disclose how they voted. Of four other voters, whose qualifications are the same as the 40 challenged voters, two voted for Proposition No. 1 and did not vote on Proposition No. 2, and two voted for Proposition No. 1 and against Proposition No. 2. Thus, as appellee contends, if all the votes challenged in the trial court are held to be disqualified, the results of the election would not be changed.

■ Appellee asserts, however, that the challenged voters were qualified, since the ledger cards which constituted the tax rolls of the School District showed property owned by each of the challenged voters, so that the property of each challenged voter was on the tax rolls of the School District. The evidence shows that most of the challenged voters pay their taxes to the School District through a mortgage company under the usual provisions of a deed of trust whereby the mortgage company withholds monthly one-twelfth of the taxes next due in a trust fund which is paid to the school district at the end of each year. The ledger cards did not reflect ownership of property on June 4, 1966, in the case of 5 voters, but the evidence shows that the tax assessor-collector had already received evidence of the changed ownership and had prepared an addressograph plate reflecting such change prior to June 4, 1966, the date of the election. Appellants urge that the fact that a voter's name did not appear on the tax rolls or cards would indicate that they were not qualified to vote. This is not the law. Article VI, Section 3a of the Constitution of Texas, Vernon's Ann.St. does not require that a person's name actually appear on the tax rolls before he is qualified to vote in a bond election. Article 7171, V.A.T.S., provides: "All real property subject to taxation shall be assessed to the owners thereof in the manner herein provided; but no assessment of real property shall be considered illegal by reason of the same not being listed or assessed in the name of the owner or owners thereof."

In Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808 (1940), the Supreme Court said:

"Under Article 6, Section 3 of the Constitution of Texas, it was held that a person otherwise qualified to vote who owned property was a taxpayer and qualified to vote in elections to determine expenditure of money or assumption of debt (in an election like this) even though his property did not appear on the tax rolls."

In Richter v. Martin, 342 S.W.2d 342, Tex.Civ.App., San Antonio 1961, n. w. h., the court said:

"It has been held that if the property of a citizen is on the tax rolls and he is liable for the taxes assessed, he has 'duly rendered' same, without regard to the particular manner or form through which the rendition was made. DuBose v. Ainsworth, Tex.Civ.App., 139 S.W.2d 307; Campbell v. Wright, Tex.Civ.App., 95 S.W.2d 149. There are a number of cases in which it may be shown that a voter has duly rendered his property for taxation though it may not appear on the rolls in his name." [citing cases]

See also Lucchese v. Mauermann, 195 S.W. 2d 422, Tex.Civ.App., San Antonio 1946, n. w. h., in which the court stated that the failure of a person's name to appear as an owner of property on the tax rolls will not disqualify that person from voting in a bond election, if he owns property which is on the tax rolls. See also Texas Public Utilities Corp. v. Holland, 123 S.W. 2d 1028, Tex.Civ.App., Ft. Worth 1938, error dism.

■ The law is well settled that property is "duly rendered" for taxation

if the property is rendered for taxation by the owner or by his agent, or if such property is placed on the tax rolls by the tax assessor-collector. Campbell v. Wright, 95 S.W.2d 149, Tex.Civ.App., San Antonio 1936, n. w. h.; Texas Public Utilities Corp. v. Holland, supra; Markowky v. Newman, supra; Lucchese v. Mauermann, supra; Hanson v. Jordan, 145 Tex. 320, 198 S.W.2d 262 (1946). It is our view that appellants have failed to sustain the burden upon them to negative every theory upon which the challenged votes, with the exception of the 9 found by the trial court, could have been legal. Solis v. Martinez, 264 S.W.2d 956, Tex.Civ.App., San Antonio 1954, error dism.

We overrule appellants' contentions that the trial court erred in overruling their motion to have the court deem their request for admissions admitted. We have considered appellants' points, and have concluded that there was no error on the part of the court in such connection, and that the court properly exercised its discretion in the rulings made by it, and furthermore that appellants have failed to show any reversible error in such connection.

Judgment of the trial court affirmed, Associate Justice Coleman dissenting.

Dissenting Opinion

COLEMAN, Justice.

At the election in question two propositions were submitted to the voters. Proposition No. 1 authorized a $3,860,000.00 bond issue for the purpose of increasing the permanent facilities of the Brazosport High School to a 2,600 student capacity, a new elementary school, additions and improvements to elementary and junior high schools. Proposition No. 2 authorized a $5,998,000.00 bond issue for the purpose of building a new 2,000 student capacity high school in the Clute-Lake Jackson area, increasing the size of the Brazosport High School to 1400 student capacity, a new ele-

mentary school, additions and improvements to elementary and junior high schools.

As required by Article 2785, V.A.T.S., a petition requesting the School Board to call the bond election was presented to it. The petition requested that the two propositions be submitted. The petition was qualified by the following conditions:

"(a) If at said election both of the said propositions shall be rejected, bonds shall not be issued nor shall taxes be levied pursuant to either proposition; or

"(b) If at said election one of the said propositions shall be favored by a greater number of votes 'For' than 'Against' such proposition, and the other proposition shall be rejected, the favored proposition shall be declared adopted, and bonds shall not be issued nor shall taxes be levied pursuant to the rejected proposition; or

"(c) If at said election each of the said propositions shall receive a greater number of votes 'For' than 'Against' such proposition, the proposition receiving the greater number of votes 'For' such proposition shall be declared adopted, and bonds shall not be issued nor shall taxes be levied pursuant to the other proposition; or

"(d) If at said election each of the said propositions shall receive a greater number of votes 'For' than 'Against' such proposition, and each proposition shall receive the same number of approving votes, the Board of Trustees shall, in its discretion, declare one of the said propositions adopted, and bonds shall not be issued nor shall taxes be levied pursuant to the other proposition."

The Board of Trustees adopted an order, reciting that the petition should be granted, and the election *as prayed for* should be ordered, calling the election. The order, which was set out in its entirety in the notices of election, contained a statement that the Board represented, covenanted and agreed to the conditions concerning the

manner of ascertaining the results of the election contained in the petition, which were quoted above.

The order canvassing the returns and declaring the results of the election found that Proposition No. 1 received 2,616 "for" votes and 2,321 "against" votes; and that Proposition No. 2 received 2,656 "for" votes and 2,367 "against" votes. It further found that there was a majority for the issuance of the bonds provided in Proposition No. 1 of 295 votes, and a majority for the issuance of the bonds provided in Proposition No. 2 of 289 votes. The order then declared that the election resulted favorably to the issuance of the schoolhouse bonds described in Proposition No. 2 and the levying of the tax in payment thereof; that the Board of Trustees was authorized to issue said bonds and to levy and collect taxes in payment thereof; that the election resulted unfavorably to the issuance of the schoolhouse bonds described in Proposition No. 1 and said bonds shall not be issued.

This election, as planned and conducted, is void for the reason that such an election has not been authorized by the Legislature of this State. The record reflects that the District had an acute shortage of classrooms, especially for high school students. The president of the School Board appointed a citizens' Committee to consider the problem. The Committee recommended that the existing high school be replaced by a new high school in another area and that the existing school be used as a junior high school for three or four years. In the alternative, the Committee suggested the existing high school be expanded and continue as the only high school, or, in the alternative, that the existing high school be repaired and enlarged and that a new high school be constructed in the Lake Jackson area.

The first proposition was submitted alone and was defeated. Then the Trustees determined that "it seemed only fair to let the people of the district vote what they wanted * * * so the two remaining propositions left were submitted." It is obvious that one of the principal questions this election was designed to determine was the question of whether a new high school should be constructed in the Lake Jackson area, and the Trustees thereby delegated the powers entrusted to them by Article 2749, V.A.T.S., to determine "how many schools shall be maintained in their school district, and at what points they shall be located" to those of the voters qualified to vote in bond elections. On this important question those residents of the District qualified to vote for trustees, but who owned no property subject to taxation, or whose property had not been duly rendered, were, in effect, disenfranchised.

It is clear that an election held for the purpose of determining whether a high school should be established and constructed in a particular area would be without binding effect for the reason that such an election is not authorized.

Article 2784e–1, Sec. 1, par. 2, provides that the Board of Trustees may issue bonds for: (1) purchase, (2) construction, (3) repair, (4) equipment of public free school buildings, and (5) the purchase of necessary sites therefor. There is no statutory authority to submit the same matters at the same election in two different issues, and no necessity therefor except for the desirability of a straw vote on the establishment and location of the new high school. It amounted to calling two elections on the same issues to be held at the same time using the same ballots. The statute does not authorize calling two elections in one order for the same purpose. Except for the difference in the amount of money authorized there is no difference in the propositions.

In Countz et al. v. Mitchell, 120 Tex. 324, 38 S.W.2d 770, Tex.Com.App., the Court said: " * * * [t]here can be no valid election without some lawful authority behind it. The right to hold an election

cannot exist or be lawfully exercised without express grant of power by the Constitution or Legislature."

In Coffee v. Lieb, 107 S.W.2d 406, Tex. Civ.App., the court said:

"Therefore, 'In all popular forms of government the power of a majority to bind the minority by a popular vote depends upon the fact that the elections are held by virtue of some legal authority, and an election held without affirmative constitutional or statutory authority is universally recognized as being a nullity.' "

Prior to the election the Board of Trustees had not determined whether a new high school should be built or where it should be built. By ordering the election on the basis of the petition presented to it, the Board determined that it was advisable either to build a new high school or to enlarge the present one. It agreed to be bound by the decision of those voters eligible to vote in bond elections. This is a vital distinction between the facts in this case and those in such cases as Moore v. Coffman, 109 Tex. 93, 200 S.W. 374 (1918); Black v. Strength, 122 Tex. 188, 246 S.W. 79 (1922), and other cases cited by appellee. In these cases the taxing authority calling the election designated the particular improvements to be constructed and their proposed location. In each case the taxing authority exercised their discretion. No alternative was submitted to the voters. They voted for or against a specific proposal. It is significant that in Moore v. Coffman, supra, the Supreme Court said: " * * * We can perceive nothing in such a course that either trenches upon or exceeds the authority possessed in these matters by Commissioners' Courts or municipal bodies, or that amounts, as is contended, to a surrender of their duty into other hands." See also Hudson v. San Antonio Ind. School Dist., 95 S.W.2d 673, Tex.Sup.1936.

Because of the identity of the propositions the ballots used in the election contained language which was not authorized by the law prescribing the form of the ballot to be used in such elections. The Supreme Court of Texas has stated that where a statute which authorizes a special election for the imposition of a tax prescribes the form in which the question shall be submitted to the popular vote, the statute should be strictly complied with. Reynolds Land & Cattle Co. v. McCabe, 72 Tex. 57, 12 S.W. 165 (1888). The additional language was necessary only because of the straw vote feature of this election.

There is yet another vice in this election. Sec. 4 of Article 2784e, V.A.T.S., provides that no tax shall be levied or bonds issued until such action has been authorized by a majority of the votes cast at an election held in the district for such purposes. Here the election included an additional purpose and required, in addition to a majority vote, that a proposition to be adopted must receive more votes than the other proposition submitted. Such a requirement has no statutory basis. The Trustees, in agreeing not to issue bonds voted on in the proposition receiving the fewer "For" votes exceeded their authority if such proposition passed by a majority vote at an election held and conducted according to the requirements of the applicable law. It has been held in such a case that even where the school board is presented with a petition signed by three-fourths of the taxpaying voters of the district asking that their former action of voting for the issuance of bonds be rescinded and the bond issue annulled, the Board lacked the power to do so. Orr v. Marrs, 47 S.W.2d 440, Tex. Civ.App., Texarkana 1932, writ dism., 122 Tex. 53, 52 S.W.2d 53.

Article 2786a, V.A.T.S., enacted in 1933, authorizes an election for the purpose of revoking and cancelling bonds voted or authorized by an independent school dis-

trict. The Supreme Court of Texas had construed this statute to mean that an election could be held to revoke bonds duly voted, authorized and issued *only* when a *later* change in conditions showed that it would be unnecessary to spend their proceeds. Huntsville Independent School District v. McAdams, 221 S.W.2d 546, Tex. Sup.1949.

From these decisions and this statute I conclude that an election called for the purpose of authorizing the issuance of bonds and the levy of a tax in payment thereof is illegal and void where the School Board, by the expedient of a contract with the voters, attempts also to determine that one or the other of the propositions voted on would be declared adopted and the other not adopted where both propositions received more votes for than against. The effect of such action would be the authorization of the issuance of bonds and the revocation of the same bonds simultaneously and without the showing of a *later* change in conditions.

The representations made to the voters as to the method of ascertaining the result of the election, together with the delegation of the discretion and authority of the Board of Trustees to the voters, was calculated to affect the voting on both propositions and the result of the election. The election was not authorized by, but was contrary to, the pertinent statutes and is illegal and void. Stephens v. Dodds, 243 S.W. 710, Tex.Civ.App., Amarillo 1922; City of Houston v. McCraw, 131 Tex. 127, 113 S.W. 2d 1215, 1938; Mesquite Ind. School Dist. v. Gross, 123 Tex. 49, 67 S.W.2d 242 (1934); Thompson v. Elmo Ind. School Dist., 269 S.W. 868, Tex.Civ.App., Waco 1925.

I would reverse the judgment of the trial court and render judgment voiding the election. According, I respectfully voice this dissent.